**USG PIPELINE COMPANY, Plaintiff,**

v.

**1.74 ACRES IN MARION COUNTY, TENNESSEE, Carl W. Puryear, Sheila W. Puryear, East Tennessee Natural Gas Company, Carl H. Blevins, Marion County Assessor of Property, John Doe, et al., and Unknown Owners, Defendant.**

Nos. 1:97–CV–622 through 1:97–CV–630, 1:97–CV–32, 1:97–CV–33,[1] 1:97–CV–34 through 1:97–CV–42, 1:97–CV–59, 1:97–CV–60 and 1:97–CV–61.

United States District Court, E.D. Tennessee.

March 25, 1998.

---

1. In case 1:98–CV–33, USGP filed a Notice of Dismissal (Court File No. 7) pursuant to *Fed. R.Civ.P.* 71A(i)(1). USGP points out no hearing has begun to determine compensation and USGP has not yet acquired title or taken possession of the property at issue. USGP also requests the return of its $3100.00 deposit. Defendants have filed no opposition to the Notice of Dismissal. Accordingly, the Court **DIRECTS** the Clerk of Court to return USGP's $3100.00 deposit and **CLOSE** case 1:98–CV–33. The remainder of this Memorandum and Order does not affect case 1:98–CV–33.

Roger W. Dickson, Miller & Martin, Chattanooga, Tennessee, William H. Farmer, Michael Mozelle, Waller, Lansden, Dortch & Davis, Nashville, Tennessee, William H. Penniman, Sutherland, Asbill & Brennan, Washington, D.C., for plaintiff.

Tracy C. Wooden, Wooden & Presley, Chattanooga, Tennessee, Edwin Z. Kelly, Kelly & Kelly, Jasper, Tennessee, Howard G. Swafford, Sr., Swafford & Swafford, Jasper, Tennessee, Kevin L. Featherston, Jenkins & Featherston, Jasper, Tennessee, Marshall A. Raines, Jr., Jasper, Tennessee, Carol Ballard, Horton, Maddox & Anderson, Chattanooga, Tennessee, for defendants.

### MEMORANDUM & ORDER

COLLIER, District Judge.

Before the Court in these 23 consolidated cases is Plaintiff USG Pipeline Company's ("USGP") Motion For Possession (Court File Nos. 4, 15, 16, 17). USGP is seeking to condemn Defendants'[2] land for the purpose of securing an easement for constructing a natural gas pipeline across Defendants' property. Defendants are owners of certain real

---

**2.** Defendants allege Plaintiff initially filed twenty condemnation actions against over fifty (50) defendants "including individual landowners, private companies, municipalities, Marion County, Tennessee and the State of Tennessee." (Court File No. 35). Plaintiff has not challenged this assertion, and the Court sees no reason why it should list each and every individual Defendant.

properties in Marion County, Tennessee, or persons claiming some interest in the properties. All Defendants filed a Response in Opposition to Plaintiff's Motion for Possession. Certain of the Defendants filed a Supplemental Response in Opposition to Plaintiff's Motion for Possession. Plaintiff filed replies. For the following reasons, the Court **GRANTS** Plaintiff's Motion For Possession in all the cases.

## I. *PERTINENT FACTS*

In 1977, the United States Congress created the Federal Energy Regulatory Commission ("FERC"). 42 U.S.C. § 7171. Because Congress determined "the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest," Congress delegated to the FERC regulatory authority over natural gas and natural gas companies. 15 U.S.C. § 717. Congress barred natural gas companies and persons from engaging in transportation or sale of natural gas, subject to the jurisdiction of the FERC, unless the company or person has been issued a certificate of public convenience and necessity. 15 U.S.C. § 717f(c). Congress granted to holders of certificates of public convenience and necessity the right of eminent domain for construction of pipelines for the transportation of natural gas. 15 U.S.C. § 717f(h).

USGP is a wholly owned subsidiary of U.S.G. Corporation. U.S. Gypsum Company ("U.S.Gypsum"), an affiliated company of USGP, is constructing a new wallboard manufacturing plant near Bridgeport, Alabama. Bridgeport is just south of the Alabama–Tennessee state line. Marion County, Tennessee, is immediately north of Bridgeport in Tennessee. U.S. Gypsum desires to have natural gas transported from an existing natural gas pipeline that transgresses Marion County through a new pipeline to its Bridgeport plant. USGP was created for this purpose. U.S. Gypsum would own the gas and would be the sole customer of USGP.

The FERC granted USGP a Certificate of Public Convenience and Necessity ("the Certificate") on October 17, 1997. This certificate authorized the construction and operation of a 14.5 mile interstate natural gas pipeline through Marion County, Tennessee, into Alabama. This Certificate also granted USGP the power of eminent domain. The Certificate requires the construction and operation of the pipeline within one year of October 17, 1997. Certain of the Defendants opposed the granting of the Certificate in administrative proceedings before the FERC. Subsequent to the issuance of the Certificate, certain of the Defendants and other interested parties petitioned the FERC to rehear and reconsider the October 17, 1997 Order. On February 11, 1998, the FERC issued its Order Denying Rehearing and/or Reconsideration ("Rehearing Order") (Court File No. 49, Exh. 1). The Rehearing Order is 22 pages in length and on its face demonstrates the FERC considered all of the matters raised in the requests for rehearing and reconsideration, including issues of notice and due process, whether the public interest would be served by the construction of the pipeline, and whether the grant of an FERC Certificate under the circumstances was unprecedented.

In this action, Defendants challenge (1) the issuance of the FERC Certificate, (2) whether USGP engaged in good faith negotiations with the Defendants in an effort to acquire the easements, (3) whether a public and necessary purpose has been demonstrated justifying condemnation of Defendants' property, (4) whether certain special rules under Tennessee law regarding condemnation of public lands have been complied with, and (5) whether Tennessee law has been complied with regarding the Motion for Possession.

## II. *DISCUSSION*

The power of eminent domain by natural gas companies is conferred by Congress in the federal Natural Gas Act, 15 U.S.C. §§ 717–717w. The Act provides in pertinent part:

When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the

owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

15 U.S.C. § 717f(h) (1982).

That USGP possesses an FERC Certificate is not in serious dispute. A copy of the Certificate is attached to the complaint and motions filed in the record. The Certificate by its terms grants USGP the power of eminent domain. It reads:

> In any event, because we have already found that USG Pipeline has demonstrated that the proposed facilities are required by the public convenience and necessity, the right of eminent domain is automatically granted to USG Pipeline once it is issued a certificate of public convenience and necessity and has attempted to engage in negotiations.

(Court File No. 1, Exh. 2).

■ Defendants, however, contend the FERC Certificate is not facially valid. In determining facial validity, the Court is limited to looking at the face of the Certificate without "explanation, modification, or addition from extrinsic facts or evidence." *West's Legal Thesaurus/Dictionary* 308 (William Statsky ed., Special Deluxe ed.1986). Barring glaring errors within the four corners of the Certificate, the Court may not look beyond the Certificate itself to determine validity.

■ Defendants primarily premise their assertion of facial invalidity on the finding by the FERC that construction and operation of the pipeline serves a public benefit. According to Defendants, the Certificate itself establishes the pipeline serves no public benefit, but rather solely a private benefit.

Defendants argue USGP seeks to condemn private and public property to construct a private pipeline for purely private purposes. They point out the pipeline will serve only the U.S. Gypsum wallboard plant in Bridgeport, Alabama. Defendants concede the FERC considered and rejected this argument. However, they urge this Court to contravene the FERC's finding that construction of the pipeline is for the public convenience and necessity. Defendants carefully style their arguments as an attack on the facial validity of the FERC Certificate, and not the substance of the Certificate.

Defendants also concede Congress explicitly has granted the courts of appeal jurisdiction to review orders of the FERC in the following provision:

> (b) Review of Commission order
>
> Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States for any circuit wherein the natural-gas company to which the order relates is located or has its principal place of business, or in the United States Court of Appeals for the District of Columbia, by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part.

15 U.S.C. § 717r(b).

### A. Facial Validity

Defendants also concede the FERC Certificate is a final and appealable order. Nevertheless, they contend the Court "must still assess whether the Certificate is 'facially valid,' so as to support eminent domain and condemnation." (Court File No. 15, p. 3).

#### 1. This Court's Consideration of Public Use

Defendants largely rely on *Transcontinental v. 118 Acres of Land,* 745 F.Supp. 366 (E.D.La.1990) in support of their argument district courts have authority to review the FERC's determination of public benefit.

They cite the following language from *Transcontinental:*

> The FERC Certificate is not conclusive on the issue of the right to expropriate property. A plaintiff must produce evidence, along with a FERC Certificate, that the expropriation will further the public interest.

*Id.* at 370.

The only authority given by the court for this statement is *Tenneco, Inc. v. Harold Stream Inv. Trust,* 394 So.2d 744 (La.Ct.App. 1981). A careful reading of this case, however, unmistakably shows the Louisiana court was stating the requirements of Louisiana state law and not federal law. The following language demonstrates reliance on Louisiana state law:

> Tenneco, Inc. is a foreign corporation engaged in the business of transporting natural gas by way of pipeline to supply the public with natural gas. As such, it is entitled, under La.R.S. 19:2(5) to expropriate needed property. Pursuant to Article 1, Section 4 of the Louisiana Constitution of 1974, expropriation may not occur except for a public and necessary purpose and with just compensation paid to the owner. The expropriating authority bears the burden of proving that the taking serves a public and necessary purpose.

Id. at 746.

The court clearly followed the requirements of Louisiana law in its analysis. Its discussion of the evidence produced at the trial level and the consequence of an absence of evidence did not rely upon any federal authority:

> Tenneco produced evidence to show that it is a business corporation involved in the transmission of natural gas by way of pipelines. It produced the Certificate of Public Convenience and Necessity referred to above, whereby it is identified as a "natural gas company" and wherein the pipeline system acquired from Mobil Oil Company was designated as one intended for use to transport natural gas in interstate commerce.
>
> It is well settled in the State of Louisiana that the issuance of a Certificate of Public

Convenience and Necessity cannot be attacked collaterally by a state court. But, the fact that the use of this line has been approved by the FERC for transportation of natural gas in interstate commerce does not preclude the raising of the question in the state court as to whether or not Tenneco is fulfilling the purpose of the certificate.

*Id.* at 747–48 (citations omitted).

Another factor in the case was the length of time that had transpired between the original issuance of the FERC Certificate and Tenneco's attempted condemnation. In 1968 the original FERC Certificate had been issued. Tenneco commenced the condemnation action in 1980. The court wanted evidence condemnation in 1980 was in the public interest and that nothing had materially changed.

> Tenneco produced no evidence as to the origin of the natural gas; its destination; whether the prospective sales will benefit the public as contemplated in the certificate of 1968; and whether the ultimate destination would qualify the transactions regarding the natural gas as interstate in nature. The filing of a Certificate of Public Convenience and Necessity in an expropriation proceeding is not conclusive on the issue of the right to expropriate the property in question. The plaintiff must produce some evidence that its particular expropriation will further the aid of the administrative action of the Federal Energy Regulatory Commission.
>
> In order to exercise the power granted to condemnors in L.R.S. Title 19, the plaintiff holding a Certificate of Public Convenience and Necessity must demonstrate that this particular taking is pursuant to the certificate.

*Id.* at 748 (citation omitted).

From the above excerpts it is clear *Tenneco* provides no support for the proposition a plaintiff possessing an FERC Certificate granting the power of eminent domain must prove to a federal district court the exercise of eminent domain would be in the public interest. Accordingly, the Court does not accept the cited language from *Transcontinental* as an accurate statement of federal

law. In reaching this conclusion, the Court also relies upon *Williams Natural Gas Co. v. City of Oklahoma City,* 890 F.2d 255 (10th Cir.1989) and *Tennessee Gas Pipeline v. 104 Acres in Prov. Cty.,* 749 F.Supp. 427 (D.R.I. 1990).

Both *Williams* and *Tennessee Gas* address the limited scope of the district court's role in reviewing the FERC's issuance of a certificate of public convenience· and necessity. The following language from *Tennessee Gas* is instructive:

> United States District Courts have a limited scope of review in condemnation proceedings brought under Section 7(h) of the Natural Gas Act. Disputes over the reasons and procedures for issuing certificates of public convenience and necessity must be brought to the Federal Energy Regulatory Commission for rehearing. 15 U.S.C. § 717r(a). Appeals may thereafter be brought to a United States Court of Appeals. 15 U.S.C. § 717r(b). The District Court's role is to evaluate the scope of the certificate and to order condemnation of property as authorized in the certificate. *See Williams Natural Gas Co. v. Oklahoma City,* 890 F.2d 255, 262 (10th Cir. 1989) ("Judicial review ... is exclusive in the courts of appeals once the FERC certificate issues."), *cert. denied,* 497 U.S. 1003, 110 S.Ct. 3236, 111 L.Ed.2d 747 (1990); *Transcontinental Gas Pipe Line Corp. v. 118 Acres of Land,* 745 F.Supp. 366 (E.D.La.1990) ("review of FERC orders are to be made only to United States Circuit Courts of Appeal"). District Courts, therefore, are limited to jurisdiction to order condemnation of property in accord with a facially valid certificate. Questions of the propriety or validity of the certificate must first be brought to the Commission upon an application for rehearing and the Commission's action thereafter may be reviewed by a United States Court of Appeals.

749 F.Supp. at 430.

In their Supplemental Response in Opposition to Plaintiff's Motions for Possession, Defendants argue *NAACP v. Federal Power Commission,* 425 U.S. 662, 96 S.Ct. 1806, 48 L.Ed.2d 284 (1976), prohibits the FERC from reaching the decision it did regarding whether construction and operation of the pipeline would serve the public interest. In this case, the Supreme Court considered whether the Federal Power Commission (the predecessor to the FERC) had the authority to issue regulations requiring its regulatees to refrain from employment discrimination against racial minorities. The Court held Congress had not given the Federal Power Commission ("FPC") such authority.

This case provides no support for Defendants' position this Court has authority to review decisions of the FERC. In *NAACP* review of the FPC's action was initiated by an appeal from the FPC's decision to the United States Court of Appeals for the District of Columbia. Moreover, the FERC's determination of a public benefit in this case is more closely tied to its delegated function and responsibilities than the FPC decision overturned in *NAACP.*

The Court concludes Defendants' challenge to the FERC Certificate based on whether the contemplated pipeline serves a public purpose or is necessary must be brought to the appropriate United States Court of Appeals. Accordingly, this Court rejects Defendants' arguments regarding the facial validity of the FERC Certificate.

2. **The Certificate on its Face Demonstrates it was Issued in Violation of Due Process**

■ Defendants raise certain due process challenges to the procedures used by the FERC in the issuance of the certificate. Similar challenges were raised in *Tennessee Gas* and were rejected:

> Defendants' argument that the Commission improperly denied landowners notice and a hearing on the issue of the necessity of the condemnation is a collateral attack on the validity of the certificate. The issue is, therefore, not a matter which this Court may decide. *Tennessee Gas Transmission Co. v. Violet Trapping Co.,* 200 So.2d 428, 431 (La.Ct.App.1967) (refusing to rule on validity of certificate issued without notice).

Even if this Court could consider this issue, it is beyond doubt that Defendants' argument lacks merit. To hold that the FERC certificate is invalid because landowners were not afforded personal notice of the hearings would require the Court to overlook a long line of decisions holding that landowners have no due process right to notice and a hearing in agency proceedings to determine the need for condemnation. Thus, even if this Court had jurisdiction to decide the matter, which it does not, Defendants' argument would fail in light of long established law and Tennessee Gas' otherwise compliance with statutory notice requirements.

749 F.Supp. at 430–31 (some citations omitted). For the same reasons, this Court must also reject Defendants' arguments.

## B. Lack of Good Faith Negotiations

In seeking condemnation, a holder of an FERC Certificate must demonstrate he "cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for" the interest in the property he seeks. 15 U.S.C. § 717f(h). Courts also have imposed a requirement that the holder of the FERC Certificate negotiate in good faith with the owners to acquire the property. *Kern River Gas Transmission Co. v. Clark County, Nevada,* 757 F.Supp. 1110, 1113–14 (D.Nev.1990); *Transcontinental,* 745 F.Supp. at 369.

Plaintiff has submitted the affidavit of Kyran A. Kennedy, President of USGP, which states, "USGP initiated condemnation actions against several property owners with whom it was not able to reach an agreement as to the acquisition of the necessary easement." (Court File No. 16, Exh. 2). Moreover, "the mere existence of this suit is evidence that [USGP] was unable to acquire the [properties] by contract." *Transcontinental,* 745 F.Supp. at 369.

Whether USGP negotiated in good faith in its efforts to acquire the easements from the landowners was challenged by only certain of the Defendants. Those Defendants are the landowners discussed below. Because the remaining landowners did not contest USGP's negotiating efforts, the Court finds with respect to them the proof is sufficient to establish by a preponderance of the evidence that USGP made good faith efforts to negotiate a fair price for easements. Consequently, with respect to those Defendants, USGP had the statutory authority to seek enforcement of its right of eminent domain granted by the FERC.

On Friday, March 20, 1998 and Monday, March 23, 1998, the Court held an evidentiary hearing on the issue of whether USGP had fulfilled its statutory duty under the Natural Gas Act of negotiating in good faith over the compensation to be paid to the landowners for the necessary rights of way. The Court heard testimony from two witnesses on behalf of USGP: Robert H. Adams and Tom Park. Adams and Park are employees of Coates Field Services, a contractor of USGP. They were employed as right of way agents to secure easements from the landowners along the route of the pipeline. They came to Marion County in July 1997 and began work reviewing the path of the pipeline, attempting to ascertain the owners of the various tracts of property, and familiarizing themselves with land values in the area. According to the testimony, court records were relied upon to determine ownership of the properties. Adams described their efforts in reaching a starting point for offers. He testified they initially offered $1,500 an acre for agricultural land. These offers were made in late July or early August 1997. They obtained easements from six landowners at $1,500 an acre. Subsequently, they negotiated a higher amount with a landowner, $2,300–$2,400 per acre, and went back to the first six landowners and paid them at that same rate. At the time of the hearing, they had settled with 23 landowners.

Adams had discussions with the Acuff heirs (Roy Acuff and Mrs. Ella Joy Engdahl) regarding two tracts and the owner of the Goforth tract regarding that tract. He made offers on the Acuff tracts but was told the heirs could not agree on a price. The owner of the Goforth tract informed him she would entertain no offers.

Park had discussions with landowners concerning six tracts, those belonging to Parker, Barnett, Bumpass, Martin, Webb, and the

Town of Jasper. Park testified he visited Mr. Orville Parker and explained he was interested in acquiring an easement on his property. Mr. Orville Parker told him the property actually belonged to his son, Jim Parker. Offers were made to Jim Parker but were all rejected. Jim Parker told Park not to bother him anymore.

Adams also talked to Mr. Cagle, the plant manager for Galaxy Carpets. Mr. Cagle referred him to the plant engineer. Adams discussed with the plant engineer Galaxy's concern about future expansion of the plant. An offer was made but not accepted.

Park testified he saw Mr. Barnett three times in person. Mr. Barnett objected to the pipeline. Mr. Barnett did not wish to discuss the matter and was opposed to the idea of condemnation.

Park testified he met Mr. Bumpass and inquired about the property. Mr. Bumpass said he did not own the property. When asked by Park who did own the property, Mr. Bumpass said he did not know or would not tell him, according to Park. Park testified he made efforts to discuss a price for the easement with Bumpass but was rebuffed. At least one letter containing an offer was sent to Bumpass in December 1997.

Park testified he had several conversations with Mr. Martin. Mr. Martin stated he was not interested in USGP's offered price. Mr. Martin did not want anyone crossing his land. He also objected to a pipeline anywhere on his property. At one point, Mr. Martin indicated $50,000 would be a more reasonable offer. Park told Mr. Martin that USGP would not agree to that figure. A letter was sent to Mr. Martin on December 4, 1997 containing an offer.

Park testified he had cordial meetings with Mr. Webb. Mr. Webb was concerned that a pipeline crossing his property would cut off access from his remaining property to Highway 28. Mr. Webb made a counteroffer which USGP rejected. Two letters were sent to Mr. Webb containing offers.

Park testified he contacted the Mayor of the Town of Jasper, Ms. Ann Bowen. According to Park, Ms. Bowen was most adamant about any negotiations. She said her constituents were very upset with condemnation. She would not negotiate until all of her constituents had settled. Letters were also sent to her containing offers.

With respect to all of these tracts of land, Adams and Park testified appraisals were not obtained at the time the initial offers were made. Subsequently, appraisals were obtained for most if not all of the tracts. The appraisals in some cases were above the offers, in some cases were substantially the same as the offers, and in some cases were below the offers. Neither Adams nor Park told the landowners precisely where on their property the pipeline would run. Both testified, however, maps were sent to most if not all of the landowners with the proposed route approved by the FERC marked.

Defendants called seven witnesses: Ann Bowen, Mack Bumpass, Jack Martin, Tommy Stanfield, John Wilson, Phillip McClean, Charles Webb, Lance Barnett, Orville Parker, Ella Joy Engdahl, and Bob Lattimore. Phillip McClean was another contractor with USGP. He was the project manager for the pipeline. Stanfield is the owner of the Century 21 Real Estate office in Jasper, Tennessee. John Wilson is a USDA agriculture agent for Marion County. Lattimore is the City Administrator for the City of South Pittsburg, Tennessee, and a part owner of one of the tracts along the pipeline route.

McClean was called to testify regarding USGP's negotiations regarding the Galaxy Carpets property. McClean had discussions with Mr. Perillo and others. He testified regarding letters sent to and received from Galaxy Carpets. According to the testimony, initially Galaxy Carpets was amenable to the pipeline crossing its property. Later, however, Galaxy insisted the proposed pipeline route would interfere with its possible expansion plans. Galaxy asked that the route be relocated to a distance farther from their plant and also made other demands. By letter USGP indicated it would be willing to consider the relocation and other demands if it could obtain approval from the FERC. Mr. McClean testified one difficulty with the relocation sought by Galaxy was that it would require the pipeline to cross under a picnic area and boat dock that was used by the

public albeit still Galaxy land. Ultimately, no agreement was reached.

Stanfield and Wilson were called to rebut testimony of Adams and Park that they talked to the manager of the local Century 21 office and county agriculture agents to get an idea of land values. They both admitted they did have conversations with Park and/or Adams but said they never provided them with any information about land values. Stanfield testified Park was in his office on several occasions. On most of these occasions, Park talked to other people in Stanfield's office. Stanfield said he did not know why Park was in his office on so many occasions nor what he talked about with other real estate people. Stanfiled testified his office only does real estate business. Wilson admitted there were two other agriculture agents in his office.

Lattimore testified as both a landowner and as the City Manager of the City of South Pittsburg. The remaining witnesses were all landowners. These witnesses did not dispute the contacts testified to by Adams and Park nor the substance of their testimony. Generally, these witnesses testified USGP never defined the specific easement path the proposed pipeline would use, the offers of compensation were too low, an easement across their land would diminish the value of their remaining land, they were opposed in principle to the pipeline going across their property, they did not think it was right for a private company to be able to use eminent domain to condemn their property, and they thought they were just given "take it or leave it" offers by USGP. On cross-examination they admitted they did not make any effort to ascertain the proposed pipeline route. Generally, they did not make any counter offers and never followed up on USGP offers in an effort to obtain better prices.

Orville Parker testified he did tell Park the land belonged to his son, Jim Parker. However, later he realized the pipeline route was farther from the road than Park indicated and on his property, not his son's property. Mr. Parker never informed Park or USGP that he owned the land. Jim Parker signed a petition to the FERC objecting to the pipeline and indicated the pipeline would cross his property.

Ms. Engdahl is one of the Acuff heirs. Her testimony only concerned the City of Jasper property. According to Ms. Engdahl, there is a recorded agreement that requires the Acuff heirs to approve any sale of property in the Jasper Industrial Park. She testified the City of Jasper holds title to the property. She testified USGP never made her or the other heirs an offer for the Jasper property.

Lattimore testified he is not sure what if any City of South Pittsburg property USGP is seeking to condemn. He testified no one in an official position with the city has been approached by USGP to purchase an easement for the pipeline. During cross-examination, it became clear the property is the Gonce tract. The City of South Pittsburg only has a non-exclusive easement for a sewer on this property. Mr. Lattimore could not identify any diminution of value in that easement if USGP was granted an easement over the same property.

Mr. Lattimore also testified in his capacity as a part owner of the Lattimore property. He testified there had been a meeting with Adams. An offer was made, and Mr. Lattimore and his wife rejected the offer. Later, a written offer was made. Neither he nor the other part owners responded to this offer. Mr. Lattimore admitted he was totally against the pipeline.

 After hearing the testimony of the witnesses and having reviewed the exhibits filed into the record, the Court makes the following findings of fact. USGP desired to acquire easements from landowners by negotiations and settlement rather than eminent domain whenever possible. It made reasonable efforts to ascertain local land values. USGP initiated negotiations with all property owners over compensation to be paid for easement to construct the pipeline. When it was told someone else owned the property, it contacted that person and initiated negotiations. It made monetary offers it considered reasonable in good faith efforts to acquire easements on the properties. These efforts began in late July or early August and continued into December. Except as a compo-

nent of compensation for the easement, USGP had no statutory obligation to negotiate over the route of the proposed pipeline. Many of the landowners are opposed to granting USGP easements for matters of principle. They view USGP's efforts to acquire easements and the FERC's action as assaults on their right to own their own property. The Court finds USGP's negotiation efforts with respect to the above properties were more than sufficient to fulfill its statutory obligations under the Natural Gas Act. Consequently, USGP had the statutory authority to seek enforcement of its right to eminent domain conferred by the FERC.

### C. Requested Equitable Relief

Defendants oppose USGP's requested equitable relief of immediate possession. They argue a delay will not adversely affect USGP because it could return to the FERC to seek a waiver or extension of the deadline for construction of the pipeline. For this reason, Defendants contend USGP will not risk a significant likelihood of irreparable injury. On the other hand, they assert they will suffer irreparable injury if USGP is permitted to proceed with construction of the pipeline and the FERC Certificate is ultimately found invalid. Defendants urge the Court to consider all appropriate equitable arguments in ruling on Plaintiff's Motion For Possession and argue the equities should lie with the landowners, not USGP.

USGP's acquisition of a FERC Certificate cloaks it with the federal power of eminent domain pursuant to 15 U.S.C. § 717f(h). However, nothing in the Natural Gas Act automatically authorizes the possessor of an FERC Certificate to take immediate possession of the property sought to be condemned prior to the condemnation proceeding. Plaintiff has not directed the Court to anything in the Act it contends grants such authority. Plaintiff argues the Court has the inherent equitable authority to order immediate possession. It cites *Northern Border Pipeline Co. v. 127.79 Acres of Land, More or Less in Williams County, North Dakota,* 520 F.Supp. 170 (D.N.D.1981) and *ITT Community Development Corp. v. Barton,* 569 F.2d 1351 (5th Cir.1978), in support of its position.

*See also, Atlantic Seaboard Corp. v. Van Sterkenburg,* 318 F.2d 455 (4th Cir.1963). The court in *Northern Border* concluded neither *Fed.R.Civ.P.* 71A nor 15 U.S.C. § 717f(h) authorizes the taking of immediate possession of the property to be condemned prior to the condemnation proceeding itself. However, the court determined it had the inherent power under its equitable jurisdiction to order immediate possession. After considering the plaintiff's assertion immediate possession was necessary to meet its construction deadline and to maintain its budget and finding the only legal remedy available, *i.e.,* the condemnation proceeding itself, inadequate, the court decided the circumstances warranted the exercise of its inherent power.

██ Here, USGP argues it is imperative that it take possession of each tract as soon as possible, before construction begins. The affidavit of Kyran A. Kennedy details the construction, operational and financial harms expected both by USGP and U.S. Gypsum, as well as the economic effects if the wallboard plant is not able to operate when completed, resulting from failure to obtain immediate possession. USGP states one property owner, by denying access to his property, could delay construction of the entire pipeline and USGP would have no adequate remedy at law. Contending its situation is similar to that faced by the court in *Northern Border,* USGP asks the Court to grant it immediate possession.

The Court has carefully considered Plaintiff's and Defendants' arguments on this point. It is clear to the Court, based on the affidavit of Mr. Kennedy, that USGP will suffer substantial financial detriment if construction of the pipeline is delayed. Some pre-construction activities are necessary. Kennedy's affidavit also indicates the wallboard plant will not be able to begin operations if construction is delayed. That would mean many potential employees of that plant would not be employed. Measured against this is the potential detriment to Defendants. They would suffer tangible injury to their property in that the property would be entered by personnel of USGP, equipment would be brought onto the land, a trench

would be dug, and the pipeline would be laid. Equipment might also be stored on the land for some time. If Defendants are successful in having the FERC's decision overturned, Defendants' property could be restored substantially to the condition it was in prior to the incursion. Monetary damages could also be awarded to compensate Defendants for the trespass to their properties, as well as any damages to their properties.

The situation here is quite similar to that in *Northern Border.* The Court finds the reasoning in *Northern Border* compelling and will follow that reasoning here. Considering the clarity of the law and after balancing the equities involved, the Court must reject Defendants' argument and will **GRANT** Plaintiff's Motion for Possession.

### D. Compliance With Tennessee Law Regarding Condemnation of Public Lands

■ The municipal Defendants—the City of South Pittsburg, the Town of Kimball, and the Town of Jasper—contend:

Before USG Pipeline is permitted to condemn public properties, it should be required to show that its "public use" of such properties is a "higher use" than the existing public use. *See generally* "Construction and Application of Rule Requiring Public Use for Which Property is Condemned to be 'More Necessary' or 'Higher Use' than Public Use to Which Property is Already Appropriated," 49 A.L.R. 5th 769 (1997).

Under Tennessee law concerning condemnation by public companies, the "streets, alleys, squares or highways ... of any municipality" may not be condemned or used for pipeline construction "until the consent of the municipal authorities shall have been obtained, and an ordinance shall have been passed prescribing the terms on which the same may be done." *Tenn.Code Ann.* 65–28–102.

(Court File No. 35, p. 18); *see also* (Court File No. 53, ¶VIII; Court File No. 62, ¶5).

In response, USGP contends the applicable Tennessee law is preempted by the Natural Gas Act. USGP cites *Kern River Gas Transmission Co. v. Clark County, Nevada,* 757 F.Supp. 1110 (D.Nev.1990), in which the court determined the Natural Gas Act preempted a Nevada law requiring a showing of a "more necessary" public use as a prerequisite to condemnation of land dedicated to public use. The court reasoned:

In light of the supremacy of federal law, this Court declines to attempt to balance the differing public uses. It is manifestly unlikely that Congress would have created the substantive right of eminent domain, clearly addressed in the Natural Gas Act, only to have that right held hostage to various state substantive schemes. *See Parkes v. Natural Gas Pipe Line Co.,* 207 Okla. 91, 95, 249 P.2d 462, 467 (1952) (the right of eminent domain under the Natural Gas Act is a federal substantive right).

*Id.* at 1118; *see also Columbia Gas Transmission Corp. v. An Exclusive Natural Gas Storage Easement,* 747 F.Supp. 401, 404 (N.D.Ohio 1990) (holding Ohio law regarding taking of property for public use is preempted by Natural Gas Act even when private company exercises federal government's power of eminent domain); *cf.* U.S. Const. art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). Defendants have offered no argument distinguishing *Kern River* from the instant case. Therefore, based upon the arguments presented, the Court finds § 65–28–102 is preempted by the Natural Gas Act.

USGP also points out the secondary authority cited by Defendants clearly states it does not apply to "cases dealing with the issue of takings by the Federal Government." Linda A. Sharp, Annotation, *Construction and Application of Rule Requiring Public Use for Which Property Is Condemned To Be "More Necessary" or "Higher Use" than Public Use to Which Property Is Already Appropriated—State Takings,* 49 A.L.R. 5th 769, § 1 (1997). Because the FERC Certificate allows USGP to exercise the federal

government's power of eminent domain, the Court finds Defendants' cited secondary authority inapposite.

### E. Compliance With Tennessee Laws Regarding Condemnation in General

■ The Natural Gas Act provides:

When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, ... it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. *The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated....*

15 U.S.C. § 717f(h) (emphasis added). Based upon the emphasized language, Defendants contend USGP must comply with Tennessee law concerning condemnation. Defendants argue USGP has not complied with Tennessee law because it has not sufficiently specified the property to be condemned or the temporary construction access easements. (Court File Nos. 36–41, 62, ¶ 4) (citing Tenn.Code Ann. § 29–16–104). As a result, Defendants conclude granting USGP's Motion for Possession would allow USGP unfettered access to Defendants' entire properties.

USGP contends *Fed.R.Civ.P.* 71A supersedes the language requiring compliance with state practice and procedure. USGP further asserts it has complied with Rule 71A, which requires "a description of the property sufficient for its identification."

The Natural Gas Act was enacted in 1938, and Rule 71A was enacted in 1951. Rule 71A(a) provides: "The Rules of Civil Procedure for the United States District Courts govern the procedure for the condemnation of real and personal property under the pow-

er of eminent domain, except as otherwise provided in this rule." The Advisory Committee Notes to Rule 71A state: "Rule 71A affords a uniform procedure for all cases of condemnation invoking the national power of eminent domain, and ... supplants all statutes prescribing a different procedure." *See Kirby Forest Indus. v. United States*, 467 U.S. 1, 104 S.Ct. 2187, 2191 n. 2, 81 L.Ed.2d 1 (1984) ("The adoption in 1951 of Rule 71A capped an effort to establish a uniform set of procedures governing all federal condemnation actions."). Interpreting a statute with similar language requiring conformity with state practice and procedure, the United States Supreme Court found the statute's procedural conformity provision was "clearly repealed" by Rule 71A. *United States v. 93.970 Acres Land*, 360 U.S. 328, 79 S.Ct. 1193, 1196 n. 7, 3 L.Ed.2d 1275 (1959); *see also Kirby Forest*, 104 S.Ct. at 2191 & n. 2 (determining Rule 71A supersedes requirement of conformity with state practice and procedure contained in 40 U.S.C. § 257).

Defendants have offered no argument distinguishing the authority cited by USGP. Accordingly, the Court finds the condemnation proceedings in this action are governed by Rule 71A, not Tennessee law, and Defendants' arguments are without merit.

### III. *CONCLUSION*

For the reasons stated herein, the Court **GRANTS** Plaintiff's Motion for Possession in all cases. The Court hereby **ORDERS** that USGP, to the extent necessary to permit USGP to carry on any of its operations described in the pleadings filed in the consolidated cases, be put into immediate possession of the property described in the complaint in each of the consolidated cases. The Court further **ORDERS** Defendants to surrender possession of said property to USGP accordingly. Finally, the Court **ORDERS** the Clerk of Court to deposit all funds received from USGP in these cases in an interest bearing account pending a determination of just compensation.

**SO ORDERED.**