Not For Publication in West's Federal Reporter
Citation Limited Pursuant to 1st Cir. Loc. R. 32.3

# United States Court of Appeals
## For the First Circuit

No. 04-1371

MARITIMES & NORTHEAST PIPELINE, L.L.C.,

Plaintiff, Appellee,

v.

NICHOLAS J. DECOULOS, as Trustee of Willowdale Realty Trust,

Defendant, Appellant,

1.55 ACRES OF LAND, MORE OR LESS, IN PEABODY, MASSACHUSETTS;
DANVERS SAVINGS BANK; MATTRESS GIANT CORPORATION;
CELLCO PARTNERSHIP, d/b/a VERIZON WIRELESS,

Defendants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Barbadoro,[*] District Judge.

Nicholas J. Decoulos, for appellant.
James T. Finnigan, with whom Rich May, P.C., was on brief, for appellee.

August 16, 2005

---

[*] Of the District of New Hampshire, sitting by designation.

**Per Curiam**.  This appeal arises out of an action for condemnation of land pursuant to the Natural Gas Act ("NGA"), 15 U.S.C. § 717f(h).  The NGA grants private natural gas companies the federal power of eminent domain in the event that they hold a Certificate of Public Convenience and Necessity ("CPCN") from the Federal Energy Regulatory Commission ("FERC") and either cannot acquire property by contract, or are unable to agree with the owner of the property on the amount of compensation to be paid for a necessary right of way for the transportation of gas.  Id.

Appellee Maritimes & Northeast Pipeline, L.L.C. ("Maritimes"), a natural gas company as defined in the NGA, 15 U.S.C. § 717a(6), and the holder of a CPCN authorizing the building and operation of a 25-mile, 30-inch gas pipeline from Methuen to Salem, Massachusetts, filed the present action to take temporary and permanent easements on 1.55 acres of land located in Peabody, Massachusetts.  The purpose of the easements is to construct and operate an underground natural gas pipeline along the approved alignment of the CPCN.  The temporary easement requires approximately 0.14 acres of the property, while the permanent easement needs 0.25 acres.  The land is owned by Willowdale Realty Trust, of which appellant Nicholas J. Decoulos is the trustee.  A building on the trust land is leased to the Mattress Giant Corporation and Celico Partnership d/b/a Verizon Wireless.

Maritimes attempted to purchase the easement rights over the course of several months of negotiations and discussions, during which time an agent of Maritimes met with or attempted to meet with Decoulos on several occasions. Having failed to reach an agreement, Maritimes dispatched a "final offer letter" on May 20, 2002, in which Maritimes made its final bid based on an appraisal performed by an independent, licenced Massachusetts real estate appraiser. According to this communication, the easement was appraised at $93,894. Nevertheless, Maritimes made a final offer of $237,400. Upon rejection of this offer by Decoulos, Maritimes proceeded to file this suit.

Thereafter, Maritimes filed a motion for partial summary judgment and/or immediate entry, seeking an order from the district court to gain easement title to the required property by eminent domain. Notwithstanding Decoulos' opposition, the motion was granted, allowing Maritimes to enter the property to install the pipeline. On April 9, 2003, the district court entered an additional order authorizing Maritimes to take the requested permanent right of way and easement. The matter then proceeded to trial for the purpose of determining the damages to be paid by Maritimes for the takings in question.

The case was tried before a jury, which entered a verdict determining the value of the permanent easement to be the amount of $68,063. This appeal followed, in which Decoulos raises four

issues: (1) whether the district court erred in allowing Maritimes to proceed based on a complaint which allegedly failed to identify "the interest to be taken" as required by Fed. R. Civ. P. 71A(c)(2), (2) whether Maritimes was required to conduct its negotiations with Decoulos in "good faith," (3) whether Maritimes' actions deprive appellant of due process under the Fifth Amendment, and (4) whether the district court erred in refusing to give an instruction requested by Decoulos regarding an alleged element of damages.  We discuss these seriatim and find them without legal merit.

Decoulos argues that Fed. R. Civ. P. 71A(c)(2)'s language to the effect that "[t]he complaint shall contain a short and plain statement . . . [of] the interests to be acquired," made defective Maritimes' complaint because it was "devoid of any statement as to the interest to be acquired," and thus appellant "was subjected to the conundrum of speculating the extent of the servitude."

This court has held that Rule 71A(c)(2) "is consistent with the notice theory of pleading embodied in the Federal Rules," id., under which we "do not require a claimant to set out in detail the facts upon which he bases his claim . . . [because of] the liberal opportunity for discovery and the other pretrial procedures . . . to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues," id. (quoting Conley v. Gibson, 355 U.S. 41, 47-48 (1957)).  The

complaint at issue more than sufficiently notified Decoulos of the substance of the action sought by Maritimes. See Southern Natural Gas Co. v. Land, Cullman County, 197 F.3d 1368, 1375 (11th Cir. 1999); East Tenn. Natural Gas Co. v. Sage, 361 F.3d 808, 830 (4th Cir. 2004).

After deciding the partial summary judgment in favor of Maritimes, and before trial, the district court also decided Maritimes' motion in limine to the effect that Decoulos would not be allowed to introduce any evidence of Maritimes' alleged bad faith negotiations because, as ruled upon by the court, bad faith was irrelevant to the issue of just compensation.

It is unclear to what Decoulos anchors his claim that good faith negotiations must precede the filing of the condemnation action, as the NGA contains no specific language to this effect. See Lamie v. United States Trustee, 540 U.S. 526, 534-35 (2004) (inquiry begins with the statutory text, and ends there as well if the text is unambiguous). The relevant section of the NGA provides:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such

> property may be located, or in the State
> courts.

15 U.S.C. § 717f(h).

Once a CPCN is issued by the FERC, and the gas company is unable to acquire the needed land by contract or agreement with the owner, the only issue before the district court in the ensuing eminent domain proceeding is the amount to be paid to the property owner as just compensation for the taking. See Guardian Pipeline, L.L.C. v. 329.42 Acres of Land, 210 F. Supp. 2d 971, 974 (N.D. Ill. 2002); Tennessee Gas Pipeline Co. v. Mass. Bay Transp. Auth., 2 F. Supp. 2d 106, 110 (D. Mass. 1998). Absent any credible authority making good faith negotiation a requirement precedent to the condemnation action, see Kansas Pipeline Co. v. 200 Foot by 250 Foot Piece of Land, 210 F. Supp. 2d 1253, 1257 (D. Kan. 2002) ("The plain language of the NGA does not impose an obligation on a holder of a FERC certificate to negotiate in good faith before acquiring land by exercise of eminent domain . . . ."), cf. National R.R. Passenger Corp, v. Boston and Maine Corp., 503 U.S. 407, 423 (1992) (refusing to interpret statutory language referring to parties being "unable to agree" to require Amtrak to engage in good faith negotiations before it could invoke its condemnation powers under the Rail Passenger Service Act), but see USG Pipeline Co. v. 174 Acres, 1 F. Supp. 2d 816, 822 (E.D. Tenn. 1998) (noting that "[c]ourts . . . have imposed a requirement that the holder of the FERC Certificate negotiate in good faith with the owners to acquire

the property"), we decline the invitation to create one in this case. Furthermore, we do not imply that the negotiations at issue here were not in good faith.

Appellant's due process argument is intermingled with his "good faith" issue, and results in a similar outcome. Decoulos claims that "Maritimes, by acting in bad faith and arbitrarily . . . deprived The Trust of its property rights." The district court rejected an offer of proof by appellant to the effect that there was lack of uniformity in Maritimes' exercise of the power of condemnation as between the various property owners. The district court was undoubtedly correct in ruling that this matter was outside the scope of the only triable issue: the value of the property condemned.

The last question raised by appellant regards a claimed error by the district court in its failure to give a requested instruction dealing with severance and stigma damages. There are several reasons why this contention should not prosper. First, Decoulos failed to properly preserve this claim in accordance with Rule 51(c). Fed. R. Civ. P. 51(c). A party who objects to the court's failure to give a requested instruction must do so on the record before the jury retires to deliberate. See, e.g., Faigin v. Kelly, 184 F.3d 67, 87 (1st Cir. 1999). Second, Decoulos points to nothing in the record that justifies an instruction for severance or stigma damages. See, e.g., United States v. 760.807 Acres of

-7-

Land, 731 F. 2d 1443, 1448 (9th Cir. 1984) ("Severance damages are compensable only if the landowner incurs a direct loss reflected in the marketplace that results from the taking.  Since the landowner has the burden of proof in establishing severance damages, the landowner must demonstrate that the taking caused the severance damages.")  (internal quotations and citations omitted).  Nevertheless, the district court gave an appropriate instruction ("you may add any damages, including stigma damages, as to the remainder of the property, the part that was not taken, but which may have been damaged by the taking and that is called severance damages"), and Decoulos fails to explain why this instruction was inappropriate.

We have considered all other arguments and issues raised by appellant and find them as frivolous and lacking in merit as the rest of this appeal.

**Affirmed**.  Appellant is granted 10 days within which to show cause why double costs should not be imposed against him.