# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-1003

_____

Alliance Pipeline L.P.

*Plaintiff - Appellee*

v.

4.360 Acres of Land, More or Less, in the S/2 of Section 29, Township 163 North, Range 85 West, Renville County, North Dakota; 4.675 Acres of Land, More or Less, in the SE/4 of Section 30, Township 163 North, Range 85 West, Renville County, North Dakota; Leonard Smith; Ione Smith

*Defendants - Appellants*

_____

Appeal from United States District Court
for the District of North Dakota - Bismarck

_____

Submitted: December 17, 2013
Filed: March 24, 2014

_____

Before WOLLMAN, LOKEN, and KELLY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Leonard and Ione Smith (the Smiths) appeal from a district court[1] order condemning portions of their property for the construction of a natural gas pipeline owned and operated by Alliance Pipeline, L.P. (Alliance), and granting Alliance immediate use and possession of the condemned land. Alliance brought the condemnation action against the Smiths' property after obtaining a certificate from the Federal Energy Regulatory Commission (FERC) authorizing Alliance to condemn land along the route of its proposed pipeline. The Smiths assert that Alliance's certificate is ineffective against them because Alliance failed to provide the Smiths with notice of its application for the certificate and because FERC failed to consider relevant state law in granting the certificate. The Smiths also assert that Alliance's condemnation action runs afoul of state and federal procedural law. We affirm.

I.

Alliance operates an approximately 2300-mile network of oil and natural gas pipelines in the United States and Canada. In 2011, Alliance began plans to construct a 79-mile-long underground pipeline from a natural gas processing plant near Tioga, North Dakota, to an interconnection with Alliance's main pipeline near Sherwood, North Dakota. There was at that time (and there continues to be) an oil boom in North Dakota, and occasionally oil prospectors would find reservoirs containing both petroleum and natural gas. The oil companies, having no pipeline capacity to ship the gas to major markets, would burn the gas at the source—a practice called "flaring." Alliance sought to take advantage of this market inefficiency by shipping the otherwise wasted gas east to Chicago.

Anyone who wishes to construct a natural gas pipeline in the United States must first obtain a certificate of public convenience and necessity from FERC, the

---

[1]The Honorable Daniel L. Hovland, United States District Judge for the District of North Dakota.

federal agency responsible for supervising and coordinating the production of energy in the United States.  See 15 U.S.C. § 717f(c)-(e).  Such a certificate also gives the recipient the authority to condemn land along the route of its pipeline under the power of eminent domain.  See 15 U.S.C. § 717f(h).  Alliance applied to FERC for a certificate of public convenience and necessity on January 25, 2012.  FERC published notice of Alliance's application in the Federal Register on February 7, 2012.

The Smiths are an elderly couple who own a farm near Sherwood, North Dakota.  The route of Alliance's proposed pipeline crossed the Smiths' property. Sometime in February 2012, Alliance representatives visited the Smiths' farm to ask the Smiths if Alliance could purchase an easement across their land.  Because the Smiths were in poor health, Alliance representatives met with Guy Solemsaas, the son of Ione and stepson of Leonard, who lives next to the Smiths and helps tend the Smiths' farm. Solemsaas told Alliance that neither he nor the Smiths were interested in negotiating the sale of an easement across the Smiths' land.

On April 13, 2012, Alliance representatives visited the Smiths again, this time to serve them with a state-court summons and petition to enter and survey their property.  Alliance asserted that it needed access to the Smiths' property to complete various field surveys required as part of its FERC application.  The state court granted Alliance's petition on May 15, 2012.

On September 20, 2012, FERC granted Alliance a certificate of public convenience and necessity, and on October 16, 2012, Alliance brought a condemnation action against two parcels of land owned by the Smiths.  Alliance moved for summary judgment and for immediate use and possession of the Smiths' land.  The district court granted both motions.  See D. Ct. Order of Nov. 26, 2012.

## II.

We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to the nonmoving party. Hill v. Walker, 737 F.3d 1209, 1216 (8th Cir. 2013). Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In challenging the district court's grant of summary judgment to Alliance, the Smiths attack both Alliance's FERC certificate and the procedural propriety of Alliance's subsequent condemnation action. We address each challenge in turn.

## A.

We begin with the Smiths' challenge to the FERC certificate, which is twofold. First, the Smiths assert that Alliance failed to provide them notice of its FERC application as required by both the Due Process Clause of the Fifth Amendment and FERC's own landowner notice requirements, set forth in 18 C.F.R. § 157.6(d). Second, the Smiths assert that FERC failed to consider state criteria for the siting of pipelines in approving Alliance's application. These criteria are set forth in North Dakota Administrative Code (NDAC) § 69-06-08-01.

We conclude that we lack jurisdiction to consider the Smiths' statutory challenges (in other words, the challenges based on 18 C.F.R. § 157.6(d) and NDAC § 69-06-08-01).

When Congress prescribes specific procedures for the review of an administrative order, courts outside the statutory review framework are precluded from hearing challenges to that order. See City of Tacoma v. Taxpayers of Tacoma, 357 U.S. 320, 336 (1958). Section 19 of the Natural Gas Act, 15 U.S.C. § 717r(a)-(b), sets forth specific procedures for challenging a FERC order:

-4-

(a) Any person, state, municipality, or State commission aggrieved by an order issued by the Commission in a proceeding under this chapter to which such person, State, municipality, or State commission is a party may apply for a rehearing within thirty days after the issuance of such order. . . . No proceeding to review any order of the Commission shall be brought by any person unless such person shall have made application to the Commission for a rehearing thereon. . . .

(b) Any party to a proceeding under this chapter aggrieved by an order issued by the Commission in such proceeding may obtain a review of such order in the court of appeals of the United States . . . by filing in such court, within sixty days after the order of the Commission upon the application for rehearing, a written petition praying that the order of the Commission be modified or set aside in whole or in part. . . . Upon the filing of such petition such court shall have jurisdiction, which upon the filing of the record with it shall be exclusive, to affirm, modify, or set aside such order in whole or in part.

Section 19 thus requires that any challenge to a FERC order first be brought before FERC itself in a petition for rehearing within thirty days of the order's issuance. If, after rehearing, a party aggrieved by the order remains unsatisfied, that party may seek further review by appealing directly to a United States court of appeals within sixty days of FERC's decision on rehearing.

"As the statutory language plainly states, the special judicial review provisions of § 19 are exclusive." Williams Natural Gas Co. v. City of Oklahoma City, 890 F.2d 255, 261 (10th Cir. 1989). By collaterally attacking the FERC order in this condemnation proceeding, the Smiths seek to circumvent this exclusive review scheme.

We need not determine whether § 19 would permit us to exercise jurisdiction over the Smiths' claim that Alliance denied them due process of law by failing to provide them with advance notice of its FERC application. Assuming that such

notice is constitutionally required, we conclude that the Smiths received notice "reasonably calculated . . . to apprise" them of Alliance's FERC application. <u>Mullane v. Cent. Hanover Bank & Trust Co.</u>, 339 U.S. 306, 314 (1950). In February 2012, Alliance visited the Smiths' farm to negotiate the purchase of an easement across the Smiths' land for the construction of its pipeline. On April 13, 2012, Alliance filed a state court action to enter and survey the Smiths' property for purposes of its FERC application. And on October 16, 2012, Alliance brought this condemnation action against the Smiths' property. All three of these events occurred before the expiration of the thirty-day rehearing period provided by § 19, and all three occurred after or around the time FERC published notice of Alliance's application in the Federal Register. Perhaps the Smiths, as an elderly couple in rural North Dakota, should not be charged with notice of the Federal Register. But their counsel in the state-court proceeding to enter and survey their land (who also represents the Smiths in this proceeding) can claim no such lack of notice. Taken together, these events gave the Smiths reasonable notice that Alliance was applying to FERC for the right to condemn the Smiths' land.

B.

The Smiths' challenges to Alliance's FERC certificate now aside, we turn next to the Smiths' allegation that Alliance violated several state procedural rules in bringing this condemnation action. The Smiths refer us specifically to North Dakota Century Code (NDCC) § 32-15-06(1), which imposes a duty upon the condemnor to negotiate with a condemnee prior to bringing a condemnation action; NDCC § 31-15-06(2)-(4), which govern appraisals and compensation in a condemnation proceeding; and NDCC § 32-15-22, which provides that a jury shall determine the value of condemned property based on a set of enumerated criteria. As we explain below, Federal Rule of Civil Procedure 71.1 preempts all of these state procedures.

In support of their premise that state law is relevant in this federal condemnation proceeding, the Smiths cite 15 U.S.C. § 717f(h), which provides that "[t]he practice and procedure [in a condemnation proceeding under this section] shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated[.]" According to the Smiths, § 717f(h) requires a party who brings a condemnation action pursuant to a FERC certificate to comply with relevant state procedural law in bringing that action.

As several other courts have observed, however, § 717f(h)'s state-law directive has been superseded. See N. Border Pipeline Co. v. 64.111 Acres of Land in Will Cnty., Ill., 344 F.3d 693, 694 (7th Cir. 2003); S. Natural Gas Co. v. Land, Cullman Cnty., 197 F.3d 1368, 1372-73 (11th Cir. 1999). Congress amended § 717f to include subsection (h) in 1947. See Pub. L. No. 80-245, 61 Stat. 459 (1947). At that time, the Federal Rules of Civil Procedure did not provide a specific framework for initiating a condemnation action. In 1951, the Supreme Court adopted Rule 71A (later renumbered 71.1), which "govern[s] proceedings to condemn real and personal property by eminent domain[.]" The advisory committee notes to Rule 71.1 state that the rule "affords a uniform procedure for all cases of condemnation invoking the national power of eminent domain" and "supplants all statutes prescribing a different procedure." And Congress has provided directly that "[a]ll laws in conflict with [the Federal Rules of Civil Procedure] shall be of no further force or effect after such rules have taken effect." 28 U.S.C. § 2072(b). Thus, Rule 71.1 displaces state procedural law in this condemnation proceeding.

The Smiths assert that the jury requirement set forth in NDCC § 32-15-22 cannot be preempted by federal statute or rule because it vindicates their Seventh Amendment right to a jury trial. But "there is no constitutional right to a jury in eminent domain proceedings." United States v. Reynolds, 397 U.S. 14, 18 (1970). The Smiths also argue that Alliance's invocation of state law in its state-court petition

to enter and survey the Smiths' property estops Alliance from arguing in this condemnation action that state law does not apply. But as the Smiths acknowledge, there is no federal law that deals specifically with entries to survey property, so there is nothing to preempt state law in such a proceeding. Accordingly, Alliance's invocation of state law in its state court action for entry to survey does not necessitate the application of state law in this case.

C.

Finally, the Smiths assert that Alliance violated the Natural Gas Act, 15 U.S.C. § 717f(h), by failing to negotiate with them in good faith before bringing this condemnation action. The Natural Gas Act itself does not mention good-faith negotiation. See id. Rather, the Act simply states:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way . . . it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts.

Id. Courts are split as to whether § 717f(h) contains an implied requirement of good-faith negotiation. Compare USG Pipeline Co. v. 1.74 Acres in Marion Cnty., Tenn., 1 F. Supp. 2d 816, 822 (E.D. Tenn. 1998), and Kern River Ga. Transmission Co. v. Clark County., Nev., 757 F. Supp. 1110, 1113 (D. Nev. 1990), with Maritimes & Ne. Pipeline, L.L.C. v. Decoulos, 146 F. App'x 495, 498 (1st Cir. 2005) (per curiam). Even if § 717f(h) does contain an implied covenant of good faith, however, Alliance has abided by this covenant. Alliance made the Smiths an offer for an easement across their land and showed the Smiths how it had calculated its offer, and it does

not appear that the Smiths ever made Alliance a counteroffer or attempted to negotiate with Alliance, even after Alliance's attempts to follow up with the Smiths. Moreover, the fact that Alliance was able to purchase easements from 90% of the affected landowners suggests that most landowners found Alliance's damages calculations to be reasonable. We conclude, therefore, that Alliance has satisfied any duty to negotiate with the Smiths in good faith.

## III.

Lastly, we address the Smiths' argument that the district court erred in granting Alliance immediate use and possession of their land. We review this exercise of the district court's inherent equitable powers for abuse of discretion. See eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

The considerations that attend a motion for immediate use and possession are similar to those that attend a motion for a preliminary injunction. See N. Border Pipeline Co. v. 86.72 Acres of Land, 144 F.3d 469, 471-72 (7th Cir. 1998); see also Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) ("Whether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.").

The court below determined that Alliance's pipeline would "fill a critical need" for the transportation of natural gas and that a delay in access to the Smiths' land could cost Alliance as much as $540,000 per day. See D. Ct. Order of Nov. 26, 2012, at 17. The court also found that Alliance had convincingly demonstrated its right to condemn the Smiths' property and that any prejudice to the Smiths could be offset by the $3,000 per acre that Alliance had agreed to deposit with the clerk of court. The

district court thus considered all four of the <u>Dataphase</u> factors in issuing its injunction.

The Smiths' attack on the district court's findings focuses primarily on Alliance's right to condemn the Smiths' property—the "success on the merits" prong of the <u>Dataphase</u> analysis. In support of this challenge, the Smiths renew many of their previous arguments. The Smiths allege, for instance, that Alliance did not provide them notice of the FERC proceeding, did not negotiate in good faith before bringing this condemnation action, and failed to comply with state law in initiating the condemnation action. Our conclusions above foreclose these arguments. If there was any doubt that Alliance had the right to condemn the Smiths' property, that doubt has now been resolved.

The remainder of the Smiths' challenges to the district court's finding consist of unsupported allegations that Alliance will not suffer irreparable harm if not granted immediate use and possession of their land. The Smiths assert, for example, that the affidavit of one of Alliance's employees was based on hearsay and that some of the harm to Alliance could have been avoided had Alliance waited until securing regulatory approval to negotiate shipping contracts. None of these allegations are sufficient to support a finding that the district court abused its discretion in holding that Alliance was entitled to immediate use and possession.

IV.

The judgment is affirmed.

_____

-10-