### TRANSCONTINENTAL GAS PIPE LINE CORPORATION

v.

### 118 ACRES OF LAND, etc.

Civ. A. No. 89–0251.

United States District Court,
E.D. Louisiana.

June 19, 1990.

G. William Jarman, Baton Rouge, La., for plaintiff.

William Bernard Gaudet, Joseph E. Le-Blanc, Jr., New Orleans, La., Michael Kenneth Heltz, Gramercy, La., Wilbur Woods Reynaud, Lutcher, La., Thomas H. Kingsmill, III, New Orleans, La., for defendants.

McNAMARA, District Judge.

Before the court are the following motions: (1) Motion of Plaintiff, Transcontinental Gas Pipe Line Corporation ("Transco"), for Partial Summary Judgment. De-

fendants, John W. Stone Oil Distributor, Inc. ("Stone"), and Wilhemina Martin Heltz, Solange Martin Faucheux, Hazel Martin Simon, Doris Mae Laiche Martin, Richard Heltz, Ferducie Faucheux, and Francis Simon (collectively the "Landowners"), oppose this Motion; and (2) Motion of Plaintiff, Transco, to Strike Affidavit Testimony. Defendant Stone opposes this Motion. The Motions, set to be heard on Wednesday, May 30, 1990, are before the court on briefs, without oral argument. The court will discuss each Motion seriatim.

### 1. *Motion for Summary Judgment*

Transco seeks partial summary judgment on its right to expropriate property for purposes of operating a natural gas storage facility.

Transco is an interstate natural gas company, as defined by section 2 of the Natural Gas Act, 15 U.S.C. § 717a(6) (1982). It is regulated by the Federal Energy Regulatory Commission ("FERC") in every aspect of its operations. Transco has operated a natural gas storage facility, known as the "Hester Storage Field," in St. James Parish, Louisiana, since 1977. The Hester field is operated pursuant to a FERC Certificate of Public Convenience and Necessity [1], and an Order of the Commissioner of Conservation for the State of Louisiana [2]. Transco currently has conventional servitudes over the Hester field which will expire in September 1990, and Plaintiff has been unable to reach an agreement with current landowners for renewed rights.

■ Transco seeks to establish its right to expropriate under both federal and state law. States and the federal government have concurrent authority over interstate natural gas companies. *Dupre v. Texas Eastern Corp.*, 639 F.Supp. 463 (M.D.La.

1986). The court has considered the elements of expropriation under both federal and state law, and holds that Transco has established its right to expropriate under federal law.

The federal Natural Gas Act provides in pertinent part:

> When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. 15 U.S.C. § 717f(h) (1982).

Transco seeks to expropriate subsurface rights to store gas in a certain, identified geological stratum known as the Hester Storage Field. Section 717f(h) has been consistently interpreted to encompass the right to expropriate subsurface gas storage rights. *Columbia Gas Transmission v. Exclusive Gas Storage Easement,* 776 F.2d 125 (6th Cir.1985); *Mississippi River Transmission Corp. v. Tabor,* 757 F.2d 662, 666, fn. 5 (5th Cir.1985). This court finds, therefore, that the property rights which Transco seeks to expropriate fall squarely within the broad grant of authority in § 717f(h). The court also finds that all of the property being sought by Plaintiff is within the boundaries of the Hester field as described and depicted in the FERC Application.[3]

---

**1.** The Certificate was issued by FERC in Docket No. 77–267 on July 14, 1977, for the operation of the Hester Storage Field in St. James Parish, Louisiana, for natural gas storage and transportation services.

**2.** The Commissioner of Conservation for the State of Louisiana issued Order 843–A on January 26, 1971 for the operation of the Hester

field. This order was supplemented on January 19, 1973, and September 12, 1977.

**3.** Plaintiff's Motion also sought to expropriate certain surface rights attendant to the underground storage, including the following: (1) one plant site; (2) two well sites; (3) four pipeline rights-of-way; and (4) one right-of-way of passage. These surface rights are located on prop-

As required by Section 717f(h), Transco is the holder of a FERC Certificate of Public Convenience and Necessity ("FERC Certificate") authorizing it "to acquire, construct and operate the subject facilities and to render natural gas storage and transportation services ... all as more fully described in the application, as supplemented, in this proceeding." FERC Certificate. Transco thus satisfies the statute's requirement of holding a FERC Certificate.

The next criterion is that the holder of the Certificate be unable to acquire the necessary land by contract or be unable to agree with the owner as to the price to be paid. The Affidavit of Steve Gibson, Transco's Land Representative, indicates that Mr. Gibson negotiated with the various landowners, and that he was unable to acquire the necessary land by contract; nor was he able to reach an agreement as to the price with the landowners. Indeed, the mere existence of this suit is evidence that Transco was unable to acquire the necessary land by contract.

Transco also seeks expropriation under state law. Louisiana allows expropriation under La.Rev.Stat.Ann. art. 19:2(5) (West Supp.1990). With respect to subsurface property, before the broad right to expropriate granted by art. 19:2(5) can be exercised, the conditions of La.Rev.Stat.Ann. art. 30:22 (West 1990) must be met. Since the court concludes that Transco has satisfied all the elements for expropriation under federal law, the court does not address the elements of expropriation under state law.

In addition to satisfying the requirements of § 717f(h), federal law requires the condemnor to have conducted good faith negotiations with the landowners in order to acquire the property, and a public and necessary purpose. The court will consider each element in turn.

## A. *Good Faith Negotiation*

When evaluating whether a condemnor engaged in good faith negotiations, the central question is: "Did the condemnor make a 'good faith' attempt to acquire the property or rights by conventional agreement before the expropriation suit was filed?" *Dixie Pipeline Co. v. Barry,* 227 So.2d 1, 5 (La.Ct.App.3d Cir.1969), *writ refused,* 255 La. 145, 229 So.2d 731 (La. 1970). When measuring good faith, the amount offered to the landowner "is material only insofar as it may have some bearing on the question of whether the condemnor was in good faith." *Id.* It has been held that a single offer to purchase the right may be sufficient to constitute good faith. *Texas Gas Transmission Corp. v. Pierce,* 192 So.2d 561 (La.Ct. App.3d Cir.1966).

Transco's negotiator, Steve Gibson, testified in his Affidavit that he negotiated with the Defendants on numerous occasions for acquisition of both the surface and subsurface rights. All known landowners were contacted at least twice. In every case, the lowest offer made was equal to or in excess of the appraised value of the subsurface rights and surface rights, based on appraisals from Atwater Consultants, Ltd., and Max J. Derbes Appraisers and Real Estate Consultants, Inc. Negotiations eventually reached a point where Transco concluded that any further attempt would be useless.

Stone vigorously contends that Transco negotiated in bad faith. Stone does not contest that Transco made several offers for the property; instead Stone states that Plaintiff's top offer of $400 an acre was too low to constitute good faith. Defendant focuses on Plaintiff's method of valuation, and contends that value should be based upon the operation of the entire field as a going concern, and not just the value of the subsurface and surface rights.

Transco's valuation is based upon the generally accepted methodology utilized in

erty owned by the Defendants, Riley F. Boudreaux, Emily Matherne Boudreaux, Robert P. Boudreaux, Marion Davis Boudreaux, Dale J. Matherne, Carolyn Hidalgo Matherne, Anthony J. Nobile and Maryne Himel Nobile. Subse-

quent to filing this Motion, Transco dismissed these Defendants from this action on March 1, 1990. As such, it is unnecessary for the court to consider Transco's claim for the expropriation of these surface rights.

*Mid–Louisiana Gas Co. v. Sanchez,* 280 So.2d 406 (La.Ct.App.4th Cir.1973), *writ denied,* 282 So.2d 142. The *Sanchez* court considered the value of materials or deposits on the condemned land, the replacement value of the native gas, and the adaptability of the property in question for the proposed use. The court did not consider the value of the field as an on-going commercial enterprise.

Cases from other jurisdictions involving expropriation of property for gas storage have uniformly disallowed any valuation of the storage rights based on the value of the entire field to the taker. *See e.g., Transok Pipeline Co. v. Darks,* 565 F.2d 1150 (10th Cir.1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978). The jurisprudence is clear that in determining the value of land taken for a public use, its value for such use is not to be considered. *United States v. Chandler–Dunbar W.P. Co.,* 229 U.S. 53, 33 S.Ct. 667, 57 L.Ed. 1063 (1913). A landowner is not entitled to the enhanced value of his property attributable to the project which makes the condemnation necessary. *State of Louisiana, Sabine River Authority v. Lindsey,* 524 F.2d 934 (5th Cir.1975), *cert. denied,* 426 U.S. 948, 96 S.Ct. 3166, 49 L.Ed.2d 1184 (1976).

Stone argues that this case should be an exception to this rule since Hester is an existing facility. Defendant's argument fails, however, since Hester is an existing facility only because of Transco's investment. The Hester field operates by virtue of Transco's plant, pipeline, wells, management, and labor. Stone contributed nothing to the development of the field. Defendant bought the property subject to Transco's servitude of storage.

Moreover, there is no evidence that Stone would use the land as a storage facility; the property is presently being used as a sugar cane field. Stone does not own the entire Hester field. Without rights in the entire field, Defendant cannot operate the

property for gas storage. Nor has Stone acquired a FERC Certificate to operate Hester as a gas storage field.

This court concludes that there is no basis for Defendant's argument that Transco negotiated in bad faith by not valuing the field as an on-going business concern. The amount offered to Stone compares favorably with amounts offered in other cases involving the expropriation of gas storage rights. *See, e.g., Mid–Louisiana Gas Co. v. Sanchez,* 280 So.2d 406 (La.Ct. App. 4th Cir.1973) ($285 per acre); *Transok Pipeline Co. v. Darks,* 565 F.2d 1150 (10th Cir.1977) ($150–$400 per acre); *Southern Natural Gas Co. v. Poland,* 406 So.2d 657 (La.Ct.App. 2d Cir.1981), *writ denied,* 412 So.2d 86 (La.1982), *cert. denied,* 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). This court holds, therefore, that Transco has conducted good faith negotiations with the landowners in this matter.[4]

B. *Public Purpose*

 Congress has declared that "the business of transporting [and therefore storing] and selling natural gas for ultimate distribution to the public is affected with a public interest." Section 1 of the Natural Gas Act of 1938, 15 U.S.C. § 717(a) (1982). Transco's FERC Certificate is presumptive evidence that the taking is affected with a public purpose. *See, e.g., Texas Pipe Line v. Barbe,* 229 La. 191, 85 So.2d 260 (1955); *United Gas Pipe Line Co. v. Landry,* 228 So.2d 565 (La.Ct.App. 1st Cir. 1969). The FERC Certificate is not conclusive on the issue of the right to expropriate property. A plaintiff must produce evidence, along with a FERC Certificate, that the expropriation will further the public interest. *Tenneco, Inc. v. Harold Stream Inv. Trust,* 394 So.2d 744 (La.Ct.App. 3d Cir.1981).

In support of its claim that the expropriation is for a public purpose, Plaintiff has submitted the affidavit of Mr. Avioli. He

4. The court's holding that Transco engaged in good faith negotiations does not imply that Transco's offer of $400 per acre constitutes the correct value in this matter. The question of the proper value shall be determined at the trial in this matter. The discussion of the amount offered and the methodology used are only illustrative of Plaintiff's good faith negotiations in regards to the Hester storage facility.

testified that the storage of natural gas in the Hester field allows Plaintiff to place more natural gas in the stream of commerce in times of peak need, such as during peak demand times and peak seasons, as well as during times of supply shut down. Transco contends that seasonal changes in demand make storage of natural gas a vital and integral part of Transco's system. Storage allows Plaintiff to react to daily swings in usage, and it allows Plaintiff to meet its firm commitments.

In response to Transco's evidence of a public purpose, Stone argues that the taking is for "private greed, [and] not public need." Stone's Memorandum, p. 7. Defendant offers several theories of why Transco seeks expropriation, and the court will briefly consider each of Stone's complaints in turn.

### 1. Business Purposes

Stone argues that Plaintiff seeks to use Hester as a "business venture." This contention was derived by Stone from a Transco memorandum which states that circumstances in the industry offer Transco the opportunity to "develop storage facilities as a business venture." The court concludes that the use of storage as a business venture does not defeat the public purpose. As long as Hester is within the FERC's jurisdiction, Hester will be used for the public purpose designated by the FERC. Transco's profits on the Hester field are regulated by federal law. 15 U.S.C. § 717c.

Stone also argues that Hester does not serve a public purpose because its parent corporation's "Vision Statement," presented to the Institutional Energy Conference in New Orleans stated that in order to provide superior returns to stockholders, the parent company will strive to become the leading transporter and merchant of natural gas in the eastern United States. Stone concludes from this statement that Hester serves the interests of Transco stockholders, and not the public. As with Stone's argument about the development of storage as a "business venture," Transco's goal of enhancing shareholder value certainly does not negate the public purpose of Hester.[5]

### 2. Underutilization of Hester

Defendant argues that Hester is not fully utilized by Transco, and thus it does not serve a public purpose. In response, Transco points out that there has been no need to fill the reservoir to capacity since there were surplus supplies of gas in the Gulf. The court holds that Stone's arguments regarding underutilization do not diminish the public purpose of Hester. There is no authority to indicate that a storage facility has to be used to its full capacity at all times in order for it to have a public purpose. Hester's underutilization only demonstrates that the FERC allowed enough excess available capacity to accommodate an ever growing market.

Stone's objection in this regard really bears on the question of the necessity for the taking. In determining necessity, not only present demands, but also those which may be fairly anticipated in the future must be considered. *Rindge Co. v. Los Angeles County*, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186 (1923). Moreover, it is not necessary for an expropriator to use all of its previously condemned land before bringing a proceeding to acquire additional lands for future needs. *See, e.g., Berry v. Alabama Power Co.*, 257 Ala. 654, 60 So.2d 681 (1952). This court holds, therefore, that Hester's underutilization does not negate either the public purpose or necessity of Transco's taking.

### 3. Sale of Hester

Stone presented evidence that Transco had been engaging in negotiations to sell Hester to Wintershall Corporation. Stone concludes by this evidence that Plaintiff's attempted expropriation is motivated only by a desire to profit from a subsequent sale of Hester. Defendant's argument,

---

**5.** The court likewise rejects Stone's argument that Hester does not fulfill a public purpose because Transco has a tower (the Transco Tower office building) in Houston. Transco's office facilities are not relevant to this litigation.

however, misconceives Transco's role in relation to the storage of natural gas for the public interest.

It is not primarily Transco that needs Hester; it is Transco's customers who need the field. The FERC Certificate is labelled one of public convenience and necessity. The public convenience and necessity does not change if Wintershall buys Transco's interests in Hester. Transco is obligated under the FERC Certificate to supply storage services at Hester. The facilities are dedicated to interstate commerce, and Plaintiff cannot abandon that service, absent a showing that abandonment would serve the public interest. Plaintiff does not have the option of selling Hester without FERC approval, and currently Transco does not have the FERC's approval.

At this time, no sale can be consummated even if Transco desired to sell Hester. Transco is legally obligated to operate Hester as a storage field irrespective of its possible desire to sell the field to Wintershall or any other entity. If Transco does sell the field, Hester would remain a FERC jurisdictional facility since the need for storage will continue to exist. A successor corporation would thus be legally bound to operate Hester as a storage facility. As such, this court holds that Stone's argument about the proposed sale of Hester to Wintershall does not negate the public purpose of this expropriation.

## C. Public Necessity

 Under federal law, the legislative and administrative determinations of public purpose and necessity are rarely overturned by the courts. *Berman v. Par-*

ker, 348 U.S. 26, 75 S.Ct. 98, 99 L.Ed. 27 (1954). A federal court should give presumptive weight to a FERC Certificate and leave the inquiry into the public purpose and necessity to the legislative and administrative arm of the government. The Fifth Circuit has noted that the courts have no jurisdiction to review the legislative or administrative discretion as to the extent of the right, interest or estate in property to be taken. *Swan Lake Hunting Club v. United States*, 381 F.2d 238, 241, fn. 4 (5th Cir.1967).[6]

The FERC has exclusive regulatory jurisdiction over the transportation of natural gas in interstate commerce. In exercising that jurisdiction, the FERC decided that it would serve the public convenience and necessity for Hester to be used for gas storage. The Certificate is open ended, with no termination date. Since the FERC is the regulatory agency with the expertise to make a determination as to the necessity of Hester, the court finds that it should not attempt to second guess the FERC with regard to Hester's necessity.[7] Moreover, the court notes that review of FERC orders are to be made only to United States Circuit Courts of Appeal. 15 U.S.C. § 717r. The proper procedural vehicle for Stone to question the necessity for Hester is to seek modification of the FERC Certificate, and not to challenge the FERC decision in this court.[8]

Since the FERC Certificate is the most important element in determining the necessity for the taking, a court should examine the Certificate to determine the parameters of the Certificate's authority. In this case, the FERC Certificate grants Plaintiff

---

**6.** See also, *United States v. Mischke*, 285 F.2d 628, 631 (8th Cir.1961) ("'When the use is public, the necessity or expediency of appropriating any particular property is not a subject of judicial cognizance.'") (quoting *Boom Co. v. Patterson*, 98 U.S. 403, 406, 25 L.Ed. 206 (1879)).

**7.** Louisiana law also holds that courts should defer to administrative findings with regard to the necessity of a taking. *See Southern Natural Gas v. Poland*, 406 So.2d 657, 661 (La.Ct.App. 2d Cir.1981), *writ denied*, 412 So.2d 86 (La.1982), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982) (Conservation Commission, charged by the legislature with public duty of

monitoring natural resources, has technical expertise available to make the necessary findings to support the use of a reservoir for storage.)

**8.** Stone points to *Tenneco, Inc. v. Harold Stream Inv. Trust*, 394 So.2d 744 (La.Ct.App. 3d Cir. 1981) for the proposition that a FERC Certificate is not conclusive on the issue of the right to expropriate. This court finds that while Transco's FERC Certificate is not conclusive, it is entitled to presumptive weight on the issue of the necessity for the expropriation. Transco has successfully presented other evidence to establish its right to expropriate.

the discretion to choose the necessary property for a plant site, well sites, and pipeline right-of-way. The FERC, however, did not give Transco discretion to choose an alternative reservoir site. The Certificate obligates Transco to perform the storage service only at Hester. Since Transco has no choice but to store natural gas at Hester, this court cannot entertain Stone's contention that Plaintiff should actually store gas at another field (namely, the Eminence field). Defendant's argument is a question for the FERC, and Stone has not exhausted its administrative remedies. *See, e.g., City of Vanceburg, Ky. v. FERC,* 571 F.2d 630 (D.C.Cir.1977), *cert. denied,* 439 U.S. 818, 99 S.Ct. 79, 58 L.Ed.2d 108 (1978).[9]

Stone purchased the property after the FERC Certificate was issued. Defendant bought the land subject to its dedication to interstate commerce. Stone is obligated to continue allowing his property to be used for that dedicated purpose, or he must seek FERC approval of abandonment. *See Texas Oil & Gas Corp. v. Valley Gas Transmission, Inc.,* 608 F.2d 231 (5th Cir.1979); *Public Service Co. v. FERC,* 587 F.2d 716 (5th Cir.1979), *cert. denied,* 444 U.S. 879, 100 S.Ct. 166, 167, 62 L.Ed.2d 108 (1979). This court concludes, therefore, that Transco has succeeded in demonstrating both the necessity and public purpose of Hester as a gas storage reservoir. Accordingly, since Transco has succeeded in demonstrating all the elements for the right to expropriate under the Natural Gas Act;

IT IS ORDERED that Plaintiff's, Transcontinental Gas Pipe Line Corporation, Motion for Partial Summary Judgment, should be and is hereby GRANTED. The court holds that Transco has the right to expropriate the Hester Storage Field. This holding leaves only the question of the amount of compensation to be paid to the landowners.

**2.** *Motion to Strike Affidavit Testimony*

Given the court's ruling on Transco's Motion for Partial Summary Judgment, IT IS ORDERED that Plaintiff's, Transcontinental Gas Pipe Line Corporation, Motion to Strike Affidavit Testimony is hereby DISMISSED as moot.

---

**9.** The issuance of a FERC Certificate of unlimited duration creates a federal obligation to serve the interstate market until abandonment. Hester is under the jurisdiction of the FERC, and abandonment of any service rendered by means of those facilities is forbidden without prior consent of the FERC. *See United Gas Pipe Line Co. v. F.P.C.,* 385 U.S. 83, 87 S.Ct. 265, 17

L.Ed.2d 181 (1966). The service obligation imposed by the FERC survives the expiration of private agreements, such as the agreement affecting Stone's property which expires on September 30, 1990. *See California v. Southland Royalty Co.,* 436 U.S. 519, 98 S.Ct. 1955, 56 L.Ed.2d 505 (1978).