**NATIONAL FUEL GAS SUPPLY CORPORATION, Plaintiff,**

v.

**138 ACRES OF LAND IN THE VILLAGE OF SPRINGVILLE, COUNTY OF ERIE, State of NEW YORK; Mathew Mahl; Ardent Resources, Inc.; U.S. Energy Development Corporation; Robert Dzara; Maria Dzara; and Unkown Others, Defendants.**

No. 99–CV–602C(M).

United States District Court,
W.D. New York.

Jan. 24, 2000.

Phillips, Lytle, Hitchcock, Blaine & Huber LLP (Edward S. Bloomberg, of counsel), Buffalo, New York, for plaintiff.

Jaeckle Fleischmann & Mugel, LLP (John T. Kolaga, of counsel), Buffalo, New York, for defendants 138 Acres of Land; Mathew Mahl; Ardent Resources, Inc.

Phillips, Lytle, Hitchcock, Blaine & Huber LLP (Richard F. Griffin, of counsel), Buffalo, New York, for defendant U.S. Energy Development Corporation.

## DECISION and ORDER

CURTIN, District Judge.

### INTRODUCTION

On August 27, 1999, Plaintiff National Fuel Gas Supply Corporation ("National Fuel") commenced this action for condemnation pursuant to the Natural Gas Act, 15 U.S.C. § 717 *et seq.*, and pursuant to an Order Amending Certificate of Public Convenience and Necessity, which was issued by the Federal Energy Regulatory Commission ("FERC"). *See* Item 1, Exh. A. By this action, National Fuel seeks an order granting it a permanent easement for the underground storage of natural gas ("the storage easement") under 138 acres of land located in Springville, New York. *Id.* ¶ 1. In addition to naming the land itself, National Fuel has named the following persons and entities as defendants: Robert and Maria Dzara ("the Dzaras"); Matthew Mahl ("Mahl"); Ardent Resources, Inc.; U.S. Energy Development Corporation ("U.S. Energy"); and various "unknown others." *Id.* ¶¶ 6–10. To date, only the Dzaras and Mahl have filed an answer to National Fuel's complaint. Items 14, 15.

By its complaint, National Fuel asks the court to order that title to the storage easement be vested in National Fuel. By letters submitted to the court, National Fuel has argued that the court can and

should grant its requested relief immediately, and that the court may do so without the benefit of a motion or further proceedings. The court has held two informal meetings between counsel for National Fuel and the Dzaras and Mahl; and on November 16, 1999, the court heard oral argument. Subsequent to the oral argument, the court has received other written submissions from the parties. Items 29 and 30. The court has reviewed the papers and considered the parties' oral arguments. For the reasons stated herein, the court now denies National Fuel its requested relief.

## BACKGROUND

### I. Proceedings Before FERC

#### A. Prior to FERC Hearing

On July 1, 1998, National Fuel filed an application with FERC in which National Fuel requested an amendment of its certificate of public convenience and necessity. *See* Item 1, Exh. A, p. 1. By that application, National Fuel asked FERC to authorize a "revised storage field" for its Zoar Storage Field in Erie and Cattaraugus Counties. *See id.* Notice of National Fuel's application was published in the *Federal Register* on July 9, 1998. *See* 63 Fed.Reg. 38160 (1998). National Fuel, Peoples Natural Gas Company, Columbia Gas Transportation Company, and the New York State Department of Environmental Conservation ("the DEC")[1] all timely filed motions to intervene in the FERC proceeding. *Id.* at 2. FERC granted all of these motions to intervene.

In April and May 1999, the Dzaras opposed National Fuel's application by submitting various affidavits, documents, and pleadings with FERC. *Id.* at 3. In their submissions, the Dzaras argued that: (1) U.S. Energy's extraction of native gas

from underneath the Dzaras' property had partly caused the expansion of the Zoar storage field, and (2) that National Fuel's storage field was an "outwardly drifting 'run-away'" field that posed a potential threat to the community. *Id.* However, FERC did not allow the Dzaras to join the proceedings as parties because the Dzaras had not requested permission for late intervention, nor had they explained why they filed their opposition so delinquently. *Id.* at 3 n. 3.

#### B. FERC Hearing and Order

On July 28, 1999, FERC held a hearing and received "all evidence, including [National Fuel's] application, and supplements, and exhibits thereto...." *Id.* at 5. On the basis of the evidence submitted, FERC set forth a helpful factual background for this action:

> National Fuel's Zoar Field was first used for the storage of natural gas in 1916, and its present certificated boundaries were established in 1948.... The current certificated storage area of the Zoar Field occupies 1,942 acres plus a 3,000 foot buffer zone, for a total of 5,834 acres.
>
> National Fuel has now determined, based on pressure and production history, gas analysis, and analysis of geological data obtained from recent drilling in the Zoar Field, that the gas stored in the storage reservoir actually occupies a larger area to the northwest and southeast than was estimated decades ago when the present boundary was defined. National Fuel avers that the Zoar Field has not expanded; rather, it has determined that the Zoar Field has all along been occupying a larger area than believed when the storage area was certificated.... In accordance with its studies, it requests that the Commission expand

---

1. The DEC filed with FERC comments on National Fuel's application and National Fuel's response to FERC's data request. Item 1, Exh. A, p. 2. After National Fuel responded to the DEC's comments, the DEC filed a letter

with FERC stating that it agreed with National Fuel and believed that National Fuel's position was correct in light of the "available geological and engineering data." *Id.*

the authorized boundaries of the Zoar Field to reflect the actual size of the storage reservoir.

Under National Fuel's proposed redefinition of the storage field's boundaries the Zoar Field would be expanded to encompass 6,841 acres plus a 5,236 acre buffer zone, for a total of 12,077 acres.

Item 1, Exh. A, pp. 1–2.

In its resulting order, FERC noted that "it is standard reservoir engineering practice to redefine the actual limits of the storage reservoir ... using data obtained during the later development and operation of the storage field." *Id.* at 4. FERC concluded that after a

> detailed evaluation of the geological and engineering data submitted by National Fuel ... we find ... that ... [National Fuel's] proposed expansion of the certificated Zoar Field reservoir storage boundary area is necessary to protect the storage reservoir from gas loss and to prevent other producers from drilling into the reservoir's gas bubble.

*Id.* at 4. Thus, on July 29, 1999, FERC ordered that "National Fuel's certificate of public convenience and necessity ... is amended to revise the certificated boundary of National Fuel's Zoar Storage Field as described ... in the body of this order." *Id.* at 5. By this order, FERC approved National Fuel's application to expand the Zoar Storage Field by more than 6,200 acres.

## II. *National Fuel's Present Action*

National Fuel now comes before this court with its FERC order in hand and states that the newly authorized Zoar Storage Field encompasses the Dzaras' property, which consists of 138 acres situated at 13590 Trevett Road in Springville, New York ("the Property"). *See* Item 1, Exh. B.[2]

National Fuel seeks "a permanent gas storage easement in the Onondaga rock formation, located approximately 1700 feet below the surface" of the Zoar Storage Field. *Id.* ¶ 5. National Fuel's proposed easement indicates that National Fuel would also need to install a certain number of monitoring wells on the surface of the condemned property. *See* Item 28, Exh. B (proposed easement). National Fuel claims that it needs the storage easement in order to operate the Zoar Storage Field, and that "[o]peration of this natural storage field is critical to the ability of National Fuel to supply its customers ... with natural gas during the fall and winter." Item 28, ¶ 6.

National Fuel and the Dzaras have not been able to reach an agreement regarding what National Fuel should pay for the storage easement beneath the Dzaras' land. However, National Fuel asserts in its complaint that it has "made several good faith offers to Robert and Maria Dzara, the owners of the property ..., to purchase the permanent natural gas storage easement at issue." Item 1, ¶ 12; *see also* Item 28, ¶ 5 (*Miga Affidavit*) (stating that National Fuel made a "fair proposal" to the Dzaras). As evidence of these good faith offers, National Fuel provided the court with the correspondence between the parties regarding a settlement value for the storage easement, as well as an affidavit from a Senior Land Manager. *See* Item 1, Exh. D; Item 21; Item 28.

For their part, the Dzaras deny that National Fuel has made a good faith offer of settlement. The history of correspondence between National Fuel and the Dzaras reveal that the parties engaged in

---

**2.** In light of the fact that National Fuel ultimately seeks to add over 6200 acres to the Zoar storage field, this action for condemnation involves only a small fraction of the bigger picture. The Dzaras have not brought a Rule 19 motion to join the other landowners as indispensable parties. In any event, in meeting with counsel the court has recognized that Rule 19 joinder is probably inappropriate because of certain unique circumstances in this action, such as the Dzaras' counterclaims against National Fuel and the Dzaras' pending action against U.S. Energy and National Fuel (99–CV–603).

occasional negotiations over the course of nearly two years. *See* Item 21. Finally, after one year had passed since the last correspondence, National Fuel offered the Dzaras ten dollars ($10.00) "per acre per year for a permanent storage easement for natural gas in the Premises. The easement would also entitle us to reasonable surface access to the Dzara No. 1 well and any other natural gas wells on the Premises." *See id.* (letter dated Aug. 20, 1999). By letter dated August 27, 1999, counsel for the Dzaras rejected this offer. *See id.*

## DISCUSSION

### I. The Parties' Positions

#### A. National Fuel Requests Immediate Relief

Presently, there is no motion before the court.[3] Notwithstanding the absence of a motion, National Fuel insists that it is entitled to, and that the court is empowered to grant, an order immediately vesting title to the storage easement in National Fuel. *See* Item 28, Exh. B (proposed easement). Once title to the storage easement has vested, National Fuel states that it will gladly proceed to a trial or hearing on the subject of just compensation.

National Fuel rightly argues that the holder of a FERC certificate of public convenience and necessity may take land by an eminent domain proceeding in federal court if the utility company is unable to secure the necessary land interest through negotiations with the landowner. *See* 15 U.S.C. § 717f(h) (1994). National Fuel also argues that New York State Eminent Domain Procedure Law ("NY EDPL") governs how National Fuel must proceed in condemning the Property. National Fuel cites section 717f(h) of the Natural Gas Act:

> [The] holder of a certificate of public convenience and necessity ... may acquire [a necessary land interest] by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated.

15 U.S.C. § 717f(h) (1994). In light of this statutory language, National Fuel argues: (1) that section 402(B) of the N.Y. EDPL governs this action; (2) that National Fuel has fully complied with that section;[4] and (3) that National Fuel, as a result of its compliance with section 402(B), is entitled to an immediate taking of the Property.

In seeking an immediate taking, National Fuel relies most heavily on the provisions of N.Y. EDPL § 402(B)(5). Specifically, section 402(B)(5) provides:

---

3. In its research, the court reviewed many condemnation cases brought under the Natural Gas Act. Those cases with a procedural posture similar to the present one invariably involved some kind of motion for possession by the plaintiff utility company. *See e.g., Northern Border Pipeline Co. v. 86.72 Acres of Land,* 144 F.3d 469 (7th Cir.1998). Nevertheless, the court will consider National Fuel's request on the basis of the submissions now before it.

4. Through the affidavit of Richard Miga, National Fuel avers that it has complied fully with section 402(B)'s relevant requirements and that it is therefore entitled to an order granting an immediate taking. *See* Item 28. Miga is a Senior Land Services Manager with National Fuel. *See id.* ¶ 1. Among other things, Miga states that National Fuel complied with section 402(B)(1) by filing a proper notice of pendency. *See id.* ¶ 11. National Fuel also states that it complied with section 402(B)(2) by serving the Dzaras with proper notice of this proceeding. *See* Items 2 and 12. Further, Miga states that National Fuel also complied with section 402(B)(2) by advertising a proper notice of the proposed acquisition. *See id.* ¶ 10. Finally, National Fuel claims that Miga has given the court all of the other necessary information required by section 402(B)(3). *See* Item 28, ¶¶ 6, 9, 12, and Exh. A. For reasons discussed *infra,* the court finds that National Fuel's alleged compliance with N.Y. EDPL § 402(B) is irrelevant.

[U]pon due proof of service of notice and upon filing of such petition and proof to its satisfaction that the procedural requirements of this law have been met, the court shall direct the immediate filing and entry of the order granting petition, which order the condemnor shall file and enter together with the acquisition map and the bond or undertaking if required, in the office of the county clerk.... Upon filing of the order and the acquisition map, ... title to such property shall then be vested in the condemnor.

NY Em.Dom.Proc. § 402(B)(5) (McKinney 1979 and Supp.1999). In light of its apparent compliance with section 402(B) and the provisions of section 402(B)(5), National Fuel asserts that title to the storage easement should vest in National Fuel immediately. *See* Item 17.

### B. The Dzaras Argue Condemnation Would Be Improper

The Dzaras vigorously oppose National Fuel's representation of the facts and the law. According to the Dzaras, National Fuel cannot secure an underground storage easement pursuant to the Natural Gas Act because the Act limits itself to holders of certificates of public necessity and convenience who seek a:

[R]ight-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus or other stations or equipment necessary to the proper operation of such pipe line or pipe lines....

15 U.S.C. § 717f(h) (1994).

Notwithstanding their position that the Natural Gas Act is inapplicable to this case, the Dzaras go on to argue that it is federal, not state, procedural law that governs this eminent domain proceeding. The Dzaras claim that Rule 71A of the Federal Rules of Civil Procedure, in conjunction with Supreme Court jurisprudence, has

impliedly repealed the practice and procedure clause of section 717f(h).

The Dzaras further argue that the Natural Gas Act gives condemnors no substantive right to immediate possession, and that the Federal Rules of Civil Procedure provide condemnors no procedural right to immediate possession. As such, the Dzaras insist that National Fuel must proceed more formally in order to condemn the Property.

Moreover, the Dzaras note that the Natural Gas Act requires condemnors to negotiate with landowners in good faith before proceeding to court to take land by eminent domain. The Dzaras argue that a trial will be necessary on this issue, among others, because there are disputed material facts regarding whether National Fuel engaged in good faith negotiations with the Dzaras.

### II. Scope of Natural Gas Act and Underground Storage Easements

█ As noted *supra*, the Dzaras argue that the Natural Gas Act does not give National Fuel the authority to seek an easement for the underground storage of natural gas. The Dzaras argue that the Act applies only to the construction or maintenance of pipelines for natural gas. *See* 15 U.S.C. § 717f(h) (1994). However, the Natural Gas Act generally and section 717f(h) specifically are "sufficiently broad to encompass ... underground gas storage facilit[ies] ... [provided that] a certificate of convenience and necessity has been ... issued by [FERC]." *Columbia Gas Transmission v. Exclusive Gas Storage Easement*, 776 F.2d 125, 128 (6th Cir. 1985); *see also Transcontinental Gas Pipe Line Corp. v. 118 Acres of Land*, 745 F.Supp. 366 (E.D.La.1990) (holding that section 717f(h) "encompass[es] the right to expropriate subsurface gas storage rights").

█ Furthermore, the Supreme Court has recognized the breadth of the Natural Gas Act and the way in which it encom-

passes the need for underground storage. In *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 295 n. 1, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988), the Court recognized that "transportation" of natural gas "includes storage."

Petitioners argued below that [plaintiff ANR] Storage [Company] was not a natural gas company within the meaning of the [Natural ·Gas Act], contending that the storage of gas constitutes neither the transportation nor the sale of gas in interstate commerce. Both courts below rejected this argument, *reasoning that "transportation" includes storage.* " 'Underground gas storage facilities are a necessary and integral part of the operation of piping gas from the area of production to the area of consumption.' " We agree.

*Id.* (quoting opinions of district court and court of appeals from same case) (emphasis added).

By arguing that National Fuel cannot secure an easement for underground storage of natural gas pursuant to the Natural Gas Act, the Dzaras read the Act too narrowly and ignore relevant case law addressing this issue. The court holds that National Fuel may seek the storage easement under the Natural Gas Act.

### III. Federal or State Procedural Law

The Dzaras have argued that federal, rather than state, procedural law governs this eminent domain proceeding. Such an argument is novel given the Natural Gas Act's express provisions to the contrary:

> The practice and procedure in any [eminent domain] action or proceeding [brought under the Natural Gas Act] ... in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated.

15 U.S.C. § 717f(h) (1994). While the Act's language seems unambiguous on this point, the issue here is whether Rule 71A of the Federal Rules of Civil Procedure supersedes this "practice and procedure clause" from the Natural Gas Act. In relevant part, Rule 71A provides:

> The Rules of Civil Procedure for the United States District Courts govern the procedure for the condemnation of real and personal property under the power of eminent domain, except as otherwise provided in this rule.

Fed.R.Civ.P. 71A(a).

As a preliminary matter, the court notes the opinions of two courts that decided that state, not federal, law applies to the "practice and procedure" of an eminent domain action brought under section 717f(h) of the Natural Gas Act. First, in *Mississippi River Transmission Corp. v. Tabor*, 757 F.2d 662 (5th Cir.1985), the court heard an appeal concerning, among other issues, whether the defendant landowner "owned a compensable property right that required expropriation, [and] whether the amount of compensation awarded ... was just...." *Id.* at 665. The *Tabor* court noted that "Louisiana law controls the issues in this case." *Id.* at 665 n. 3. Likewise, in *Tennessee Gas Pipeline Co. v. 104 Acres of Land*, 780 F.Supp. 82, 84 (D.R.I.1991), the court addressed the issue of just compensation for a "condemnation of a pipeline easement across an 80.8 acre" stretch belonging to the defendant landowner. In the context of fixing damages under section 717f(h), the *Tennessee Gas* court held that "Rhode Island law ... controls the issues in this case." 780 F.Supp. at 85.

At first blush, these holdings from *Tabor* and *Tennessee Gas* seem completely in line with the present action. However, these two cases involved questions of substantive law rather than questions of procedural law. In this action, the issue is whether federal procedural law should govern. *Tabor* and *Tennessee Gas*, then, are distinguishable from the present action. As such, the court discounts the value of these two cases with respect to the court's present analysis.

Several courts have, however, spoken to the precise issue that the court faces here. In two cases, courts applied the procedural law of the state where the property was situated. First, in *Algonquin Gas Transmission Co. v. 60 Acres of Land*, 855 F.Supp. 449 (D.Mass.1994), the court confronted an evidentiary question in the context of an eminent domain proceeding brought under section 717f(h).[5] The court there simply looked to the language of section 717f(h) and held that it was bound to "apply the 'practice and procedure' followed in similar proceedings in the courts of the state where the property is situated." *Algonquin Gas*, 855 F.Supp. at 453. Without any further analysis, the *Algonquin Gas* court concluded that "the court must apply the practice and procedure that are followed in eminent domain cases in Massachusetts state court." *Id.*

The court in *Portland Natural Gas Transmission System v. 4.83 Acres of Land*, 26 F.Supp.2d 332 (D.N.H.1998), came to the same conclusion as the court in *Algonquin Gas*. *Portland Gas* involved a natural gas company that petitioned for a permanent easement so that it could build and maintain a pipeline for natural gas. The court in *Portland Gas* noted the express provisions of section 717f(h) and dispensed with an argument raised by a defendant landowner in the following way:

> Since State law, N.H.Rev.Stat.Ann. ("RSA") 371:15, V, provides a holder of a FERC certificate with a right to such a "quick take," it is irrelevant whether or not such a right is available under federal law.... [Under section 717f(h) of the Natural Gas Act,] RSA 371:15, V, is ... properly construed in this context to provide the same substantive right to a quick take, whether the forum is a State or federal court.

*Id.* at 335–36. Thus, the court in *Portland Gas* clearly decided that state, not federal,

procedural law governed eminent domain proceedings brought under the Natural Gas Act.

Admittedly, all of the above cases—*Tabor, Tennessee Gas, Algonquin Gas*, and *Portland Gas*—favor National Fuel's interests to varying degrees. However, it is critically important that none of those cases addressed the issue of how Rule 71A interacts with 15 U.S.C. § 717f(h). This court has determined that it is necessary to resolve that question before determining whether federal or state procedure will govern this eminent domain proceeding. As a result, these four cases favoring National Fuel are of very limited value to the court's analysis.

On the other hand, the Eleventh Circuit and a court from the Eastern District of Tennessee have both resolved how Rule 71A interacts with section 717f(h). Both courts determined that Rule 71A superseded section 717f(h), and that federal, not state, procedural law governs eminent domain proceedings brought under the Natural Gas Act.

In *Southern Natural Gas Co. v. Land, Cullman County*, 197 F.3d 1368 (11th Cir. 1999), the Eleventh Circuit recently held that federal procedure governs condemnation actions brought under Natural Gas Act. In *Southern*, the court of appeals faced a case where the plaintiff natural gas company was attempting "to condemn nearly 200 tracts of land." *Id.* at 1371. In the appeal, the parties argued over whether certain landowners were entitled to a jury trial. In setting forth its analysis, the court framed the issue this way: "This appeal raises the issue of whether Rule 71A of the Federal Rules of Civil Procedure supersedes the Natural Gas Act's practice and procedure clause for the condemnation of property." *Id.* at 1372. The court agreed with Southern and found that

---

**5.** For the purposes of analysis, the court finds that the evidentiary question in *Algonquin Gas* was an issue of procedural law. *See Ealy v. Richardson–Merrell, Inc.*, 897 F.2d 1159, 1163 (D.C.Cir.1990) ("this case ... turns on

the admissibility of the expert testimony.... [therefore,] this court is enforcing a procedural rule governing admissibility [of witness testimony]") (citing *Richardson v. Richardson–Merrell, Inc.*, 857 F.2d 823 (D.C.Cir.1988)).

Rule 71A did indeed supersede the Natural Gas Act's practice and procedure clause. *Id.*

In coming to this conclusion, the court in *Southern* first reasoned that "statutes relating to the same subject matter should be construed harmoniously if possible, and if not, that more recent or specific statutes should prevail over older or more general ones." *Id.* (quotation and citation omitted). Further, the court relied on a pair of Supreme Court decisions [6] in which the Court found that "Rule 71A supersede[d] the practice and procedure language of the prior statute[s]." *Id.*

In a case relied on by the Eleventh Circuit in *Southern,* the Eastern District of Tennessee also concluded that Rule 71A superseded the practice and procedure clause in section 717f(h). *See USG Pipeline Co. v. 1.74 Acres,* 1 F.Supp.2d 816 (E.D.Tenn.1998).[7] *USG Pipeline* involved plaintiff USG Pipeline's "Motion for Possession" of a number of real properties. *Id.* at 817–18. The defendant landowners argued that the court should deny USG's motion because USG had failed to "comply with Tennessee law concerning condemnation." *Id.* at 827. The court in *USG Pipeline,* however, found that Rule 71A of the Fed.R.Civ.P. had "supersede[d]" the language in section 717f(h) "requiring compliance with state practice and procedure." 1 F.Supp.2d at 827. In reaching this decision, the court in *USG Pipeline* relied on: (1) Rule 71A itself; (2) that rule's legislative history; and (3) a pair of Supreme Court decisions.

As the court in *USG Pipeline* did, this court looks to the Advisory Committee's Notes to Rule 71A, where the Committee stated. "Rule 71A affords a uniform procedure for all cases of condemnation invoking the national power of eminent domain, and ... supplants all statutes prescribing a different procedure." Fed.R.Civ.P. 71A (Advisory Notes). Subsequent to the adoption of Rule 71A in 1951, one court stated that "[t]o reread the anarchist effects of conformity with state practice back into Rule 71A ... would undermine one of the basic objectives of that rule." *West, Inc. v. United States,* 374 F.2d 218, 224 (5th Cir.1967).

It is also highly relevant that Congress enacted the Natural Gas Act in 1938, *see* 15 U.S.C. § 717f(h) (1994),[8] while it was not until 1951 that Congress adopted Rule 71A. *See* Fed.R.Civ.P. 71A. Much like the court of appeals in *Southern,* this court finds that "it is elementary that a more recent and specific statute is reconciled with a more general, older one by treating the more specific as an exception which controls in the circumstances to which it applies." *Thompson v. Calderon,* 1998 WL 420300 (9th Cir.) (citing *2B Sutherland on Statutory Construction* § 51.02 (5th ed.1992)).

▬ The court recognizes that there is an opposing maxim: "[R]epeals by implication are not favored." *Morton v. Mancari,* 417 U.S. 535, 549, 94 S.Ct. 2474, 41 L.Ed.2d 290 (1974). However, a court should read the more recent statute as repealing the older statute if giving effect to both of the statutes would defeat the "sense and purpose" of the more recent statute. *Watt v. Alaska,* 451 U.S. 259, 266,

---

6. *See infra* (discussing these two Supreme Court decisions).

7. In fact, the Eleventh Circuit in *Southern* said this regarding the *USG Pipeline* decision: "[W]e can find only one case that directly analyzes the relationship between Rule 71A and § 717f(h).... [That case is] *USG Pipeline v. 1.74 Acres ...." Southern,* 197 F.3d 1368, 1374.

8. The court recognizes that it was not until 1947 that Congress enacted subsection "h" of section 717f, which contains the relevant state practice and procedure clause. *See* Fed. R.Civ.P. 71A (Historical and ·Statutory Notes: 1947 Amendments); *see also* Act of July 25, 1947, c. 333, Pub.L. No. 80–245 (found in 1947 U.S.Code Cong. Service, 466 (setting forth Act which created 15 U.S.C. § 717f(h))). This point is unimportant in light of the fact that Rule 71A was still enacted approximately four years after subsection "h."

101 S.Ct. 1673, 68 L.Ed.2d 80 (1981); *see also Mancari,* 417 U.S. at 551, 94 S.Ct. 2474. In this case, it would defeat the express purpose of Rule 71A if the court were to apply section 717f(h)'s provisions regarding state practice and procedure. *See West,* 374 F.2d at 224 (remarking on impermissible "anarchist effects" that "conformity with state practice" would have on the policy of Rule 71A).

A pair of Supreme Court decisions regarding other statutory authority for federal eminent domain proceedings also inform this court's analysis. In *United States v. 93.970 Acres,* the Court was dealing with a condemnation action brought by the federal government. 360 U.S. 328, 79 S.Ct. 1193, 3 L.Ed.2d 1275 (1959). In a footnote, the Court stated:

> Respondents rely on ... 50 U.S.C.A. § 171, which provided that condemnation proceedings like the one here involved were "to be prosecuted in accordance with the laws relating to suits for the condemnation of property of the States wherein the proceedings may be instituted." But it is settled that this language required conformity in procedural matters only.... And insofar as it required such procedural conformity it was clearly repealed by Rule 71A, Federal Rules of Civil Procedure....

*Id.* at 333 n. 7, 79 S.Ct. 1193.

More recently, the Court ruled on a similar issue in *Kirby Forest Industries, Inc. v. United States,* 467 U.S. 1, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984). In *Kirby,* the court faced a condemnation proceeding brought by the federal government pursuant to the " 'straight condemnation' procedure prescribed in 40 U.S.C. § 257." *Id.* at 3, 104 S.Ct. 2187. The Court noted that:

> [S]uits under § 257 originally were required to "conform, as near as may be, to the practice, pleadings, forms and proceedings existing at the time in like causes in the courts of record of the State" in which the suits were institut-

ed.... The adoption in 1951 of Rule 71A capped an effort to establish a uniform set of procedures governing all federal condemnation actions.

*Id.* at 4 & n. 2, 104 S.Ct. 2187.

National Fuel argues that *Kirby* and *United States v. 93.970 Acres* are inapposite because they involved statutes other than the Natural Gas Act. While this is true, National Fuel's argument ignores the fact that natural gas companies, like National Fuel, exercise the power of eminent domain only because Congress has delegated this federal authority to them.[9] Logically, the procedure which governs the federal government's condemnation proceedings should also govern the condemnation proceedings brought by private entities by virtue of the same federal power of eminent domain. Thus, for the purposes of this analysis, it is unimportant that *Kirby* and *United States v. 93.970 Acres* involved the United States government as condemnor as well as different statutory authorities. Rather, these cases underscore Congress's intent that Rule 71A provide uniform procedure for all condemnation actions brought under federal authority. *See* Fed.R.Civ.P. 71A (Advisory Notes) (discussing policy of uniform procedure for "the national power of eminent domain").

Finally, in an informative dissenting opinion, Judge Traxler of the Fourth Circuit lends credence to this court's understanding of Rule 71A's role in federal condemnation actions.

> Before Rule 71A became effective on August 1, 1951, land condemnation proceedings in federal court were subject to the vagaries of a patchwork of inconsistent state and federal procedures.... Some federal statutes, for example, authorized the exercise of the power of eminent domain and directed that courts employ the procedure used by the state courts in similar circum-

---

9. Granted, private entities do not have the same degree of power that the United States government has in eminent domain proceedings. *See infra* Discussion, Part IV.

stances, while other statutes merely authorized condemnation without addressing the appropriate procedure to follow. Still other statutes provided comprehensive procedures for certain types of condemnation actions. The adoption of Rule 71A greatly simplified matters, "capp[ing] an effort to establish a uniform set of procedures governing all federal condemnation actions." *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 4 n. 2, 104 S.Ct. 2187, 81 L.Ed.2d 1 (1984). The text of the rule now makes clear that "[t]he Rules of Civil Procedure for the United States District Courts govern the procedure for the condemnation of real and personal property under the power of eminent domain, except as otherwise provided" in Rule 71A itself.

*United States v. Keller*, 142 F.3d 718, 725 (4th Cir.1998) (Traxler, J. dissenting).[10]

In light of the foregoing, the court finds that Rule 71A supersedes the practice and procedure clause of section 717f(h) and that it is federal, not state, procedural law that governs the present condemnation proceeding. As such, New York's EDPL does not procedurally govern. Rather, Rule 71A governs procedurally, while the Natural Gas Act governs substantively.

## IV. Immediate Possession and the Natural Gas Act

■ Having decided that federal procedural law governs, the court must now determine whether National Fuel is entitled to immediate vesting of title to the storage easement. Rule 71A, unlike section 402(B) of the EDPL, does not give condemnors the right to immediate posses-

sion once the condemnor has fulfilled all of the Rule's procedural requirements. Therefore, if National Fuel may claim the right to immediate possession of the Property, it must do so pursuant to a substantive or equitable right.

However, the Natural Gas Act does not give private natural gas companies, such as National Fuel, the substantive right to immediate possession of property. *Northern Border Pipeline Co. v. 127.79 Acres of Land*, 520 F.Supp. 170 (D.N.D.1981), represents the lead case on this issue. In that case, plaintiff Northern Border, a natural gas company, moved for immediate possession of its requested easement. *Id.* at 171. In relevant part, the court held:

> Although the plaintiff possesses the authority pursuant to Title 15 U.S.C. § 717f(h) to exercise the right of eminent domain, this right is not in itself sufficient to authorize the taking of immediate possession prior to the condemnation proceeding itself. The authority to take immediate possession conferred by the Declaration of Taking Act [40 U.S.C. §§ 258a–258e] and similar statutes which confer the authority to take immediate possession is reserved to the United States. No statutory authority exists which would authorize a private party, such as the plaintiff, to take immediate possession of the real property prior to the condemnation proceeding.

*Id.* at 172.

Other courts have cited favorably to *Northern Border* and have recognized the distinction between cases where the United States is the condemnor and cases where a private entity is the condemnor

---

10. In quoting this language from *Keller*, this court does not unduly rely on Judge Traxler's dissent. Rather, the court cites Judge Traxler's language as a further clarification of its own reasoning. Furthermore, the quoted language from *Keller* is not the substance of Judge Traxler's dissent, but only provides the background for his rationale. Moreover, even the majority of *Keller* impliedly supports this court's holding. That is, the dispute in *Keller* was the way in which parties may assert and

withdraw demands for jury trials in a condemnation action brought under the Natural Gas Act, 15 U.S.C. § 717f(h). 142 F.3d at 721–22. The parties and the courts in *Keller* all agreed that the Federal Rules of Civil Procedure governed this question. *See id.* (noting that "the availability of a jury trial in a condemnation case is governed by FRCP 71A(h)"). Ultimately, the majority and dissent only disagreed as to the proper interpretation of the Fed.R.Civ.P.

acting under federal authority. *See Humphries v. Williams Natural Gas Co.*, 48 F.Supp.2d 1276, 1281 (D.Kan.1999) (holding that Natural Gas Act did not give plaintiff right to immediate taking and reasoning that "the gas company bringing the condemnation action is a private corporation, and ... unlike the federal government, its only authority to condemn property is grounded in § 717f(h)"); *USG Pipeline*, 1 F.Supp.2d at 825 ("nothing in the Natural Gas Act automatically authorizes the possessor of a FERC certificate to take immediate possession of the property sought to be condemned prior to the condemnation proceeding"). In light of the foregoing, this court holds that National Fuel has no substantive right to immediate possession pursuant to the Natural Gas Act.

■ Although National Fuel has no substantive or procedural rights to immediate possession, certain courts have recognized that a district court, by its inherent equitable power, may grant a utility company immediate possession of subject property. *See e.g., Northern Border Pipeline v. 86.72 Acres*, 144 F.3d 469, 471 (7th Cir.1998). However, courts must exercise inherent powers with great restraint because such powers are shielded from direct democratic controls. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980).

The court finds that National Fuel has not stated an equitable right to its requested relief. First, the existence of an adequate legal remedy generally precludes the availability of equitable relief. *See e.g., O'Shea v. Littleton*, 414 U.S. 488, 499–504, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Here, it appears that National Fuel has an adequate legal remedy, *i.e.,* the condemnation proceeding. In addition, a plaintiff must be able to show the threat of an irreparable injury in order to state a claim for equitable relief. *See id.* In this case, there are only conflicting indications that National Fuel or its customers might be subject to irreparable injury, such as great expenses or losses of service, if immediate relief is not granted. In his affidavit, National Fuel representative Richard Miga has stated that the storage easement is "critical" to National Fuel's ability to supply its customers with natural gas. Item 28, ¶ 6. Yet, counsel for National Fuel conceded to the court at oral argument that neither National Fuel nor its customers would face irreparable injury if National Fuel failed to secure title to the storage easement within a matter of weeks. Thus, in balancing the very limited evidence regarding these equitable considerations, the court finds that use of the court's inherent equitable power is unwarranted.

In light of the foregoing, the court finds that National Fuel has no procedural, substantive, or equitable right to the immediate vesting of title to the storage easement.

## V. Good Faith Negotiations

■ While not necessary to the court's present analysis, the court notes that the Dzaras have argued that National Fuel will ultimately fail to secure the storage easement because of its failure to comply with a statutory requirement of the Natural Gas Act. That is, in order for a plaintiff natural gas company to establish its entitlement to take property by eminent domain under the Natural Gas Act, the plaintiff must show: (1) that it holds a FERC certificate authorizing the relevant project; (2) that the land to be taken is necessary to the project; and (3) that the company and the landowners have failed to agree on a price for the taking. *See Tennessee Gas Pipeline Co. v. Massachusetts Bay Transp. Auth.*, 2 F.Supp.2d 106, 108 (D.Mass.1998). In addition to showing an inability to agree on a price with the landowner, the plaintiff utility company must also establish that it engaged in good faith negotiations with the landowner. *See Transcontinental Gas*, 745 F.Supp. at 369.

In the present case, the Dzaras allege that National Fuel is not entitled to take title to the storage easement because it

failed to engage in good faith negotiations with them. *See* Item 24, p. 4. The Dzaras assert that National Fuel tortiously interfered with the Dzaras' lease with U.S. Energy by taking a leasehold interest in the Property long before National Fuel and the Dzaras began to negotiate regarding the storage easement. *See id.,* Exh. C, ¶¶ 7–22. According to the Dzaras, their lease with U.S. Energy contemplated the use of an active natural gas well. Apparently, the Dzaras were to receive royalties from the sale of natural gas that was extracted from the well. *See id.* The Dzaras claim that their lease with U.S. Energy contained a clause that barred assignment of the lease without their approval. The Dzaras further claim that National Fuel unlawfully took an assignment of the lease and then caused production from the well to stop approximately two years ago. *See id.* ¶¶ 11–15. As a result, the Dzaras allege that they stopped receiving the royalties; payments for which they had bargained when they signed the lease with U.S. Energy. Thus, the Dzaras allege, National Fuel tortiously interfered with the lease, proceeded in bad faith when negotiating, and thereby left the Dzaras without leverage in the negotiations.

The court need not reach a holding on this issue here. At some point, however, National Fuel must refute the Dzaras' allegations by showing that it negotiated with the Dzaras in good faith.

### CONCLUSION

National Fuel made no motion for its requested relief. Therefore, there is no motion for the court to deny. In light of the foregoing, however, the court now holds that National Fuel is not entitled to an immediate vesting of title to the storage easement.

So ordered.